Elizabeth Brown **GOSSETT** et al.,
Appellants,

v.

**TIDEWATER ASSOCIATED OIL COMPA-
NY et al., Appellees.**

No. 403.

Court of Civil Appeals of Texas.

Tyler.

Dec. 19, 1968.

Rehearing Denied Jan. 30, 1969.

Walker F. Means, Barstow, Shelby H. Blaydes, Fort Stockton, for appellants.

Thompson, Knight, Simmons & Bullion, H. F. Thompson, Dallas, for appellees, Getty Oil Company, Texaco Inc., and another.

Chester E. Blodget, Tulsa, Okl., for appellee, Skelly Oil Co.

B. R. Reeves, Palestine, for appellees, Joe A. Campbell and another.

Jackson, Walker, Winstead, Cantwell & Miller, John L. Lancaster, III, Dallas, for

appellees, Mary Jane Hyman, Trustee, and another.

Eldridge, Goggans, Davidson & Silverberg, Wallace P. Finfrock, Dallas, for appellees, Sidney E. Blumenthal and another; Akin, Gump, Strauss, Hauer & Feld, Dallas, of counsel.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, for appellee, Felmont Oil Corp.

Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., Dallas, for appellee, Royal H. Brin, Jr., Independent Executor of the Estate of Royal H. Brin.

MOORE, Justice.

This is an appeal from a summary judgment. Plaintiffs brought suit against defendants in trespass to try title to recover an undivided one-third interest in a tract of 215⅔ acres of land situated in Anderson County, Texas, and for an accounting of all oil and gas produced therefrom. Defendants entered a plea of not guilty and affirmatively asserted title to said land by adverse possession under the five, ten and twenty-five year statutes of limitations as provided by Articles 5509, 5510 and 5519, Vernon's Annotated Texas Statutes, respectively.

The plaintiffs below, appellants here, are the heirs of R. L. Brown and Mary Jane Brown Pettit, deceased, under whom plaintiffs assert ownership of an undivided one-third interest in the 215⅔ acre tract.

The defendants below, appellees here, fall into three classes—those claiming a leasehold estate under oil and gas leases; those claiming as fee holders, subject to the oil and gas leases; and those claiming ownership of the surface estate. Due to the vast number of parties on both sides, the parties will hereinafter be referred to as plaintiffs and defendants.

The matter came on for hearing before the trial court on the motion of defendants for a summary judgment. After a hearing on the motion, the trial court entered a summary judgment for each and every defendant except those who were in default. Thereafter, the plaintiffs duly perfected this appeal.

It is without dispute that the record title to the land was at one time vested in plaintiffs' ancestor, S. P. Brown, by a regular chain of title descending from the sovereignty of the soil, he having purchased the 215⅔ acre tract from W. B. Clay by warranty deed dated August 3, 1877. S. P. Brown died intestate in the late 1880's and was survived by two children, R. L. Brown and Mary Jane Brown Pettit. On October 11, 1883, R. L. Brown and wife deeded an undivided one-third interest in the land to Miles Rollo. On the same day, Mary Jane Brown Pettit and husband, and Miles Rollo executed a deed conveying an undivided two-thirds interest in the land to Edward Mills. After these conveyances, a one-third undivided interest in the land remained in R. L. Brown and Mary Jane Brown Pettit, the plaintiffs' ancestors. This outstanding undivided interest constitutes the basis of plaintiffs' suit which they filed on September 8, 1955.

Defendants do not claim record title. The documentary evidence offered by the defendants in support of their motion for summary judgment based on their claim of limitation title is as follows:

By a deed, regular on its face, and purporting to convey the entire fee simple estate, Adam Cone conveyed the full fee simple land in question to defendants' predecessors in title, W. S. and H. A. Jones, by special warranty deed dated August 30, 1904, which was filed for record on the same day. In that deed, a vendor's lien was retained, which was released by Adam Cone by an instrument filed for record on April 25, 1907. At the time of the conveyance by Adam Cone to W. S. and H. A. Jones, both the grantor and grantee were strangers to the title claimed by the plaintiffs as heirs of S. P.

Brown, R. L. Brown and Mary Jane Brown Pettit.

On December 10, 1931, W. S. and H. A. Jones conveyed the land by warranty deed to O. B. Rogers, which deed was filed for record on December 14, 1931.

On May 26, 1932, O. B. Rogers conveyed the land by warranty deed to J. A. Campbell and wife, Florence Campbell, which was filed of record June 13, 1932.

On July 6, 1933, J. A. Campbell and wife executed an oil and gas lease to E. H. Van Patten covering the land in question, which was filed for record on August 22, 1933. By successive assignments and corporate name changes, the oil and gas leasehold estate passed to and became vested in leasehold defendants, Getty Oil Company and Texaco, Inc.

Meanwhile, beginning September 29, 1933, J. A. Campbell and wife made conveyances of fractional interests in the royalty mineral estate, subject to such lease, to numerous defendants or their predecessors in title.

Defendants adduced evidence showing that the original oil and gas lessee, Tidewater Oil Company, as operator for itself and the interests of its co-lessee, commenced drilling for oil on the land on June 28, 1934, and completed an oil well thereon on July 28, 1934. Thereafter, the company drilled six additional producing oil wells on the land and drilled one well which was dry. The record shows that each of the seven wells, upon being completed as a producer, was equipped with the necessary equipment, including casing, tubing, Christmas trees, flow lines, separators, and all above ground installations essential for producing wells. Following the completion of the first well, tank batteries were placed upon the land. From and after the dates of completion, all of said wells have continuously produced oil or gas until the time this suit was filed.

Meanwhile on November 17, 1937, J. A. Campbell and wife conveyed to defendant Tidewater Associated Oil Company and the other co-owners of the leasehold estate, a surface estate in ten acres situated on the west side of the land in suit. Shortly thereafter, in the fall of 1937, Tidewater Associated Oil Company, as operator for the co-lessees, constructed a large extraction and recycling plant on the ten-acre tract. This plant was in operation for more than ten years. After it ceased operation in 1948, the lease operator continued to use the plant for storage purposes until 1953. During this time, a switcher was employed by the lease operator and he and his family lived on the land from 1937 to 1946.

The record further shows that J. A. Campbell and the heirs of his deceased wife conveyed the surface estate to the entire tract except the above mentioned ten acres to H. R. Rampy by warranty deed dated June 4, 1941, and filed for record June 9, 1941. After the death of H. R. Rampy, his surviving wife and heirs continued in possession and are among the defendants in this suit. On May 25, 1943, during the lifetime of H. R. Rampy, he and his wife conveyed to the defendant lease operator the surface estate to a 1.5 acre tract out of the land in suit adjoining the above mentioned ten acre tract. The lease operator constructed an atmospheric storage tank upon the 1.5 acre tract immediately after its purchase and the tank remained thereon until 1948. Thereafter, the 1.5 acre tract was used in connection with the ten acre tract for the purpose of storing salvage until 1953.

With reference to the payment of taxes, defendants offered evidence showing that W. S. and H. A. Jones paid all taxes on the land from 1905 to 1931, all of which were paid before delinquency except for the years 1921 through 1923 and 1929 through 1931. During the five year period from 1924 to 1928, inclusive, W. S. and H. A. Jones paid all taxes currently before they became delinquent.

The record further shows that the defendant holders of the leasehold estate and

their predecessors in interest paid all taxes on the oil and gas leasehold annually before delinquency for the years 1934 through 1966, inclusive.

All taxes were likewise paid on the ten acre plant site from 1940 to 1966 inclusive.

With reference to the possession and use of the land by the various claimants, defendants offered the affidavit of R. E. Barton, which reads in part as follows:

"I am over 80 years of age, * * *.

"I have lived in Cayuga, Anderson County, Texas, all of my life except that in 1905 I left and was gone for three years, and in 1917 I moved away and was gone for three years before I moved back. My home is located about one and one-half miles from a tract of land sold by Adam Cone to W. S. and H. A. Jones, being called 215⅔ acres of the James Wilson Headright in Anderson County * * *. I knew the land when it was bought from Mr. Cone by the Jones' and I have continuously known it since that time.

\* \* \* \* \* \*

"While I do not know what use was made of this land during the six years I was away, as stated above, I know that except for those years W. S. and H. A. Jones planted and harvested each year after 1904 a crop on about 25 or 30 acres of cleared land in the Southeast portion of this 215⅔ acre tract, and plowed this cleared part of the land each year for this purpose continuously until about the year 1925. The next year, in about 1926, W. S. and H. A. Jones cleared out another field which consisted of about 50 acres located in the Northwest corner portion of the 215⅔ acre tract. W. S. and H. A. Jones planted this 50 acre tract in about 1927, the year after it was cleared, and since they first planted that 50 acres they planted and harvested a crop on that 50 acres and cultivated it for that

purpose each and every year down to and including the year 1931, when they made the deed to O. B. Rogers, referred to above. The crops planted and harvested on these two cleared tracts during these years were principally cotton and corn.

"I know that Joe A. Campbell, through his tenants, farmed a portion of this 215⅔ acre tract, planting corn and cotton and harvesting the same, each year from the time he purchased the same until he sold it to H. R. Rampy, and he also pastured a part of the tract. Since H. R. Rampy bought this land he and his heirs have continuously farmed a portion of said tract and have used a portion thereof for pasturage purposes and are so using the same at this time.

\* \* \* \* \* \*

"Also in about the year 1933 and for approximately ten years thereafter, I served as committeeman for the Federal Farm Administration in a program known as the AAA program, and during those years it was a part of my duties as a Committeeman to actually survey on the ground the crops, and I did do this work, and the 215⅔ acres referred to above was included in this work, and therefore know from first hand knowledge that J. A. Campbell from the time of the deed to him in 1933 up to the time of the deed to H. R. Rampy in 1941, referred to above, and thereafter H. R. Rampy, were claiming the title to this property to the exclusion of every other person. I also knew W. S. Jones and H. A. Jones well and often visited with them, and know that they claimed the title to this property from the time they got a deed to it from Adam Cone in 1904 until they deeded it to O. B. Rogers in 1931. My knowledge and association in and around this property before, during and after my service as committeeman have caused me to know that no one claiming as an heir of S. P. Brown, R. L. Brown or Mary Jane Pettit ever asserted any claim to this land until this suit

was filed in the District Court of Anderson County, Texas in 1955."

In response to the affidavit of R. E. Barton, plaintiffs offered the counter-affidavits of J. N. and Luke Gurganus.

The affidavit of J. N. Gurganus shows that he is the husband of Aler Gurganus, one of the party plaintiffs to the suit. In substance, his testimony shows that he lived near the land in controversy from 1900 to 1919 when he moved to Burkburnett, Texas. During that period of time, he stated that the land in question was wooded, unfenced and was not in cultivation. He also stated that the land being cultivated by W. S. and H. A. Jones from 1900 to 1919 was not a part of the 215⅔ acre tract, but was land on the Wildcat Ferry Road. He did not undertake to state what use of the land was made after he moved away in 1919.

The substance of the affidavit of Luke Gurganus is that he first became familiar with the land in question in about 1900 or 1903. He stated that at that time only a small part of the land was fenced and that up until the time oil was discovered, the people in that area only fenced the tracts which were planted with crops; that before the opening of the oil fields, the 215⅔ acre tract in question was not enclosed as a whole by a fence capable of turning stock. He further stated that he was acquainted with H. A. and W. S. Jones and knew that they had some fences on the old "Heiser place" and on the "Cornwall place," in 1912. Nowhere in his affidavit, however, does he specifically state that H. A. and W. S. Jones did not cultivate or use the land in question.

Plaintiffs also offered the counter-affidavit of Elizabeth Brown Gossett. Her affidavit, in addition to delineating heirship, merely states that she had claimed an interest in the land ever since she knew about it. There is nothing in her affidavit or any of the other affidavits offered by the plaintiffs showing that either she or any of the other heirs ever lived on the land, paid taxes thereon, or exercised any dominion over the land subsequent to the time their ancestors, R. L. Brown and Mary Jane Brown Pettit, executed their deed to Miles Rollo on October 11, 1883. There is nothing in her affidavit nor any other affidavit showing that any of the heirs ever asserted any claim of ownership prior to suit. Nor do we find anything in any of plaintiffs' affidavits or exhibits disputing defendants' evidence of open, notorious, exclusive and adverse possession by defendants and their predecessors in title, especially after January 1, 1921.

By their first group of points, plaintiffs take the position that the undisputed evidence shows that the parties were co-tenants. Based upon this premise, they contend that the summary judgment in favor of defendants was improper because defendants failed to demonstrate actual or constructive notice of the repudiation of the co-tenancy relationship so as to commence the running of the statutes of limitations. We do not share this view.

In our opinion the record before us fails to establish the relationship of co-tenancy. Adam Cone, under whom the defendants claim title, was not one of the Brown heirs, nor was he otherwise within the chain of title claimed by the plaintiffs. He was a complete stranger to the plaintiffs' title. Consequently, when he conveyed the entire fee simple title to W. S. and H. A. Jones, they, as well as all other subsequent grantees, assignees and oil and gas lessees, were likewise strangers to the plaintiffs' chain of title. In such a situation, defendants did not have the burden placed on co-tenants of bringing home notice of repudiation of the co-tenancy relationship to their fellow co-tenants. Being strangers to the plaintiffs' title, defendants were required only to claim under a deed purporting to convey the full fee simple title to the property; record the deed; go into possession and claim adversely in order to commence the running

of the statutes of limitations. Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352, 353; Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973; Parr v. Ratisseau (Tex.Civ.App.), 236 S.W.2d 503, n. r. e.; Page v. Pan American Petroleum Corporation (Tex.Civ.App.), 327 S.W.2d 469, n. r. e.

By the remaining points of error, plaintiffs attack the summary judgment on the ground that the trial court erred in impliedly holding that the defendants had matured title by limitation because they say the evidence shows numerous disputed fact issues existed with respect to each of the limitational periods asserted by defendants. In view of the fact that the various points are not briefed separately, we will not undertake a separate discussion of each point.

The judgment does not contain findings of fact or otherwise indicate the basis for the ruling in favor of the defendants. By implication, we must assume that a judgment is based upon a finding that no issue of triable fact remained to be determined, upon at least one of the limitational defenses asserted by defendants. Our task, therefore, is to determine whether the judgment may be sustained on the theory that no genuine issue of material fact exists with respect to at least one of the three affirmative defenses of limitations.

In trespass to try title suits, as in other suits, the defendant is permitted to rest his motion for summary judgment upon a showing that the plaintiff's claim is barred as a matter of law by the affirmative defense of limitations. Rule 166-A, Texas Rules of Civil Procedure; McDonald, Texas Civil Practice, Vol. 4, Sec. 1726.1, supplement page 41.

In determining whether the evidence is sufficient to sustain limitation title based upon the affirmative defense of limitations, the evidence must be considered in a light most favorable to the party against whom the summary judgment is granted, as in the case of an instructed verdict. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Cline v. Texas Hotel (Tex.Civ.App.), 392 S.W.2d 594; McDonald, Texas Civil Practice, Vol. 4, Sec. 1726.5.

The record before us reflects without dispute that defendants claim under a deed purporting to convey the full fee simple title to the land in question; that such deed has been of record for more than fifty years prior to the filing of suit. It only remains there to determine whether defendants' possession has been sufficient to satisfy the requirement of either of the statutes of limitations. In this connection, the record shows without dispute that the defendants and those under whom they claim have been in actual possession continuously for more than 34 years prior to the time suit was filed, cultivating, using or enjoying the land, uninterrupted by suit or adverse claim by the plaintiffs. The record further reflects that for more than 20 years, immediately prior to the filing of this suit, defendants and those under whom they claim were actively engaged in producing oil and gas from the land. Plaintiffs have not by answer to the motion for summary judgment or by affidavit in any manner refuted the foregoing. Based upon our review of the entire record, we are convinced that the evidence offered by the defendants shows conclusively that the defendants and those under whom they claim have held open, notorious, exclusive and continuous adverse possession of the land and interest in question, in good faith under claim of color of title and claim of right, and have paid taxes thereon for a sufficient length of time to satisfy the requirements of the five, ten and twenty-five year statutes of limitations, thereby barring plaintiffs' asserted right thereto.

We are of the further opinion that the evidence adduced by defendants, if presented in the usual form of trial, would have compelled the giving of an instructed ver-

dict in their favor under either of the above mentioned statutes of limitations. Consequently, we believe that the granting of the summary judgment in favor of the defendants was proper. Page v. Pan American Petroleum Corporation, supra; First State Bank of Wichita Falls v. Oak Cliff Savings & Loan Association, Tex., 387 S.W.2d 369.

It follows that all of the plaintiffs' contentions are overruled and the judgment of the trial court is affirmed.