496 S.W.2d 205 (1973)
W. S. RYAN, Appellant,
v.
Doyle D. COLLINS, Individually and as Trustee for Clyde L. Lovingood, et al., Appellees.
No. 699.
Court of Civil Appeals of Texas, Tyler.
June 7, 1973.
Rehearing Denied June 21, 1973.
*207 Harlan Harper, Jr., Fanning & Harper, Dallas, for appellant.
R. L. McSpedden, Collie, McSpedden & Roberts, Jack Johannes, Johannes, Robertson & Wilkinson, Dallas, for appellees.
McKAY, Justice.
This is an appeal from a summary judgment. Plaintiff, W. S. Ryan, brought suit against Doyle D. Collins, Clyde Lovingood, John L. Arnold, Paul Hamby and Leo Ledbetter for damages based on fraudulent representations in connection with his purchase of three thousand five hundred (3,500) shares of stock in the N. R. T. Electronics Corporation. Defendants answered with a general denial and also filed a motion for summary judgment under the provisions of Rule 166-A, Texas Rules of Civil Procedure. In their motion for summary judgment each defendant alleged that based on the pleadings, affidavits, and depositions on file no material issue of fact remained to be determined and that they were entitled to a summary judgment as a matter of law. Each defendant also alleged that the plaintiff's action was not commenced within two years after the date of the alleged fraud and plaintiff's cause of action was therefore barred by the two-year statute of limitations. Defendant Leo Ledbetter further alleged in his original answer that the plaintiff was guilty of laches in that he failed to use due diligence in securing service of citation on him. After a hearing the trial court granted the defendants a summary judgment and plaintiffs, W. S. Ryan, duly perfected this appeal.
Plaintiff alleged in his petition that his cause of action for fraud was based upon certain representations made by defendant, Leo Ledbetter, to the effect that the stock of N. R. T. Electronics was (1) hot stock, (2) very good, and (3) with unlimited possibilities. He further alleged that Ledbetter promised him that the stock would be delivered and issued to him in his name within six to eight weeks from the date of the alleged conversation on November 3, 1968. He further alleged that at the direction of defendant Ledbetter he made out and delivered checks in the amount of Seven Thousand and No/100 ($7,000.00) Dollars payable to defendant, Paul Hamby. His petition contains no allegations that any of the defendants, other than Ledbetter, made any representations to him or in any way induced him to buy the stock. He alleged in his petition, however, that Leo Ledbetter was acting under the direction of the other defendants and was an agent for them and that all defendants were co-conspirators in an effort to sell him the stock.
A brief summary of the facts will be necessary. N. R. T. Electronics was a small company engaged in the development of an electronic calculator. As in the case of most small corporations it was continuously in need of capital. It seems that Hamby and Arnold were familiar with the company and had purchased some of the stock. As time went on, the company was faced with the problem of raising more capital in developing its product and therefore determined to issue more stock. Ledbetter learned that the company had some stock for sale through Hamby and Arnold and purchased some of the stock. Mr. Ledbetter, being Ryan's Sunday School Superintendent, knew that Ryan was interested in investing in stocks and called him over the telephone and told him that there were three thousand five hundred (3,500) shares of N. R. T. stock available and that he could make arrangements for him to buy the stock at Two and No/100 ($2.00) Dollars per share if he was interested. Accordingly to his affidavit, he testified that Ledbetter told him that the stock was "hot" and had "unlimited" possibilities and that it was a "very solid buy," and that he could get him such stock, he thought, at Two and No/100 ($2.00) Dollars a share, and that there were only three thousand five hundred (3,500) shares available and that he could get it from Arnold or Hamby at that price; and that he relied on such representations. In plaintiff's deposition testimony, he testified that *208 Ledbetter told him that the stock was not registered but that it was going to be registered and would be delivered to him in from six to eight weeks. He testified that on November 4, 1968, after he had made out his check and delivered it to Ledbetter, he received the following letter from Arnold:
 Nobember 4, 1968
 (sic)
 "Mr. W. S. Ryan
 3866 Medallion
 Dallas, Texas
 Dear Mr. Ryan:
 This will confirm our verbal agreement by which you have purchased
 3,500 shares ($7,000) of N. R. T. Electronics, which is being held in the
 name of Mr. John L. Arnold until such time as the stock is registered
 and processed properly.
 Sincerely,
 John L. Arnold
 United Dist., Inc.
 JLA/JB
 P. S. The trust officers of the Lake Wood Bank will issue a letter stating
 that these shares will be held in trust by the Lakewood Bank in your account
 until (sic) a later date."
He testified he did not know either Arnold or Hamby and that this letter was the only contact he had ever had with either of them. At some undisclosed date after he received the letter from Arnold, he testified he called the Lakewood Bank and talked to defendant Collins with regard to the stock; that the nature of the conversation was with reference to how the company was progressing; that Collins told him on some occasion that the company was doing well and that on other occasions he told him that it looked bad. On June 30, 1970, he wrote defendant Collins, with regard to the stock which was being held in trust for his account and asked Collins to confirm this and also to give him any other information he had with regard to the stock. Collins replied to the letter stating "As Trustee for Clyde L. Lovingood, I am holding his stock in NRT Electronics, Inc. I have been instructed to hold for your benefit 3,500 shares of the above mentioned NRT Electronics, Inc. stock until such time as the stock can be issued in your name." In connection with the stock held by Lovingood as trustee, the record shows that he was holding a large block of stock as trustee for several individuals, including defendant Arnold. On January 27, 1971, plaintiff wrote Arnold telling him that he either wanted his money back or he wanted the stock issued in his name as he had been promised by Ledbetter when he purchased the stock. He testified that this was the date that he determined to rescind the contract and subsequently determined to file suit after he drove by the N. R. T. building and saw a notice that the company was in bankruptcy, on April 1, 1971. The record fails to show the date on which he filed his original petition; however, the briefs concede it was filed in June, 1971. While the transcript does not contain plaintiff's original petition, it is without dispute that he filed suit against all of the defendants named hereinabove, including defendant Ledbetter. In his first amended petition, filed on August 2, *209 1971, plaintiff omitted Ledbetter as a defendant.
Citation was served on all defendants except Ledbetter.
In his fourth amended petition, filed on July 20, 1972, on which plaintiff went to trial, he again named Ledbetter as one of the defendants and caused citation to be served on him for the first time.
Plaintiff admits that he has never met defendant, Clyde L. Lovingood, and has never had any correspondence with him. He also admits that the only contact he ever had with defendant Collins was long after the alleged false representations had been made and the contract had been entered into.
By several points of error plaintiff contends that the trial court erred in granting a summary judgment for the defendants because he contends that fact issues were presented, first in connection with his cause of action for rescission of the contract and secondly, with his alleged cause of action for fraud. We cannot agree with his contentions and accordingly affirm the judgment rendered by the court below.
This being a summary judgment case it is our duty to determine whether the defendant would have been entitled to an instructed verdict had there been a conventional trial with proofs the same as shown by the summary judgment record. Broussard v. Moon, 431 S.W.2d 534 (Tex. 1968). The evidence must be considered in the light most favorable to plaintiff. Gossett v. Tidewater Associated Oil Co., 436 S.W.2d 416 (Tex.Civ.App.Tyler, 1968, wr. ref'd n. r. e.)
Plaintiff argues in his brief that his petition must be construed as an action first for rescission and alternatively for damage for fraud and deceit. We cannot agree with the plaintiff's proposition that his petition states a cause of action for rescission for several reasons. First, his petition shows that he is suing for compensatory damages as well as for exemplary damages for fraud. Nowhere in his petition does he specifically allege an alternative count for rescission of the contract. The only alternative plea in his petition is for money had and received. Furthermore, nowhere in his prayer does he ask for a rescission of the contract but seeks only to recover damages for fraud. Secondly, an action for rescission is an equitable proceeding, and there is no allegation that there is no adequate remedy at law. Chenault v. County of Shelby, 320 S.W. 2d 431 (Tex.Civ.App.Austin, 1959, wr. ref'd n. r. e.) Nowhere in his petition does he offer to do equity by offering to return the letter by which the defendant Arnold assigned him three thousand five hundred (3,500) shares of stock. While the evidence shows that the company was in bankruptcy, this does not necessarily mean that the stock would be forever worthless. We think the plaintiff had the obligation of doing equity before he would be entitled to assert the equitable action of rescission and therefore that he would be required to tender back to defendant Arnold the instrument giving him title to the shares of stock. Thirdly, we do not consider his pleadings as alleging a cause of action for rescission in equity because nowhere in his petition does he allege that immediately after he discovered the alleged fraud or alleged breach of promise to deliver the certificates, that he acted with due diligence in rescinding the contract. In the equitable action of rescission, plaintiff must allege that he acted with due diligence and promptly rescinded the contract, especially where the property involved is likely to fluctuate in value. His petition contains no such allegations. On the contrary he alleged that after failing to receive his stock certificates within six to eight weeks as promised, he waited for more than a reasonable length of time before rescinding the contract. The record bears out this allegation in that it shows that he waited until January, 1971, before attempting to rescind. Thus, under the pleadings we do not believe the plaintiff's petition can be *210 construed as one for rescission. Therefore, whether or not a fact issue existed on a cause of action not asserted by him in his pleadings would be completely immaterial. We think the sole and only cause of action asserted by the plaintiff in his pleadings was an action for damages for fraud and deceit.
While his petition for damages for fraud and deceit does not specifically assert that any of the alleged representations made by Ledbetter was false and was proven by him to be false when made we think the allegation may be interpreted as alleging three false representations and one alleged false promise. The alleged false representations were that the stock was "hot"; that it had "unlimited possibilities;" and was a "solid buy."
With respect to all three of the foregoing representations, we are of the opinion that the statements or representations alleged to have been made by Ledbetter were nothing more than an opinion and therefore cannot be made the basis of a cause of action for damages for fraud.
In order to state a cause of action for fraud the plaintiff must show that the defendant made a false representation of a material fact with intent to induce the plaintiff to act upon it and that plaintiff did so rely upon it and thereby suffered damages to his injury. Long v. Smith, 466 S.W.2d 32 (Tex.Civ.App.Corpus Christi, 1971, wr. ref'd n. r. e.); 25 Tex.Jur.2d, sec. 13, Fraud and Deceit, pp. 626-628.
"`It is well settled that in order to constitute actionable fraud the representation complained of must concern a material fact as distinguished from a mere matter of opinion, judgment, probability or expectation.'" Fossier v. Morgan, 474 S. W.2d 801 (Tex.Civ.App.Houston 1st, 1971, n. w. h.); Peterson v. Barron, 401 S.W.2d 680 (Tex.Civ.App.Dallas, 1966, n. w. h.). We hold that the alleged representations of Ledbetter amounted to nothing more than an opinion, judgment, probability or expectation and that even though such statements or representations were made, they do not amount to actionable fraud and therefore plaintiff has no cause of action based upon these representations.
Where no confidential relationship exists between the parties, as mere expression of an opinion as to the value that proves to be incorrect or false generally is not considered to be a misrepresentation of a material fact upon which one may rely. This rule is particularly applicable where there is nothing to indicate the statement was other than the expression of an honest opinion. Fossier v. Morgan, supra.
This brings us to the question of whether or not the alleged false promise by Ledbetter that the stock would be delivered within six to eight weeks constitutes actionable fraud. Under the statutory law of this state, a false promise made in connection with the sale of stock constitutes actionable fraud where there is a false promise to do an act when the false promise is material, made with intention of not fulfilling it, made to induce a person to enter into a contract, and relied upon by such person entering into the contract. Business and Commerce Code, V.A.T.S., sec. 27.01.
Defendants contend that even though Ledbetter's promise amounts to actionable fraud and even though the stock certificates were not delivered in accordance with the promise, plaintiff's action was barred by the two-year statute of limitations. We agree.
The two-year statute of limitations, Art. 5526, Vernon's Ann.Tex.Civ.St., applies to suits for damages for fraudulent representation. Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438 (1940); Lacy v. Carson Manor Hotel, 297 S.W.2d 367 (Tex. Civ.App.Dallas, 1957, wr. ref'd n. r. e.); Reynolds-Southwestern Corp. v. Dresser Industries, Inc., 438 S.W.2d 135 (Tex.Civ. App.Houston 14th, 1969, wr. ref'd n. r. e.); Finger v. Morris, 468 S.W.2d 572 *211 (Tex.Civ.App.Houston 14th, 1971, wr. ref'd n. r. e.). The two-year statute also applies in actions based on fraudulent inducement to execute a contract, Reynolds-Southwestern Corp. v. Dresser Industries, Inc., supra, and in actions based on alleged fraudulent representations in sale of investment certificates. Permian Basin Life Ins. Co. v. Polasek, 404 S.W.2d 883 (Tex. Civ.App.Corpus Christi, 1966, n. w. h.).
It is also the rule that the statute would begin to run when plaintiff knew of the alleged wrongdoing or knew of facts sufficient to excite such inquiry as would have been made in the exercise of reasonable diligence. Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738 (1944); Reynolds-Southwestern Corp. v. Dresser Industries, Inc., supra.
Plaintiff knew or should have known as early as January 4, 1969, that he had not received his stock certificates and that the alleged promise to deliver them within six to eight weeks was therefore false. He alleges that he did not know the promise was false, however, until January 27, 1971. We think any reasonably prudent person would have discovered the promise to be false and would have known the promise was false within a reasonable time after January 4, 1969. Certainly he should have discovered that the promise was false within two or three months after January 4, 1969. Yet he did not file suit until June 11, 1971, which was some thirty-one (31) months after the alleged false promise was made. We think his claim was barred by the two-year statute of limitations. Zapffe v. McElroy, 364 S.W.2d 299 (Tex. Civ.App.Dallas, 1963, n. w. h.).
In connection with plaintiff's suit against Leo Ledbetter, the record shows that although Ledbetter was made a defendant in the original suit he was later omitted as a defendant in subsequent amended pleadings and was not again named as a defendant until plaintiff filed his fourth amended original petition on July 20, 1972. Thus, Ledbetter was never served with citation until after July 20, 1972, some three and a half years after plaintiff knew that Ledbetter failed to fulfill the promise. By failing to obtain service upon defendant Ledbetter, for more than three and a half years, there can be no doubt that the two-year statute of limitations barred his claim against Ledbetter.
In conclusion we think that even though the two-year statute of limitations was not applicable, plaintiff's own testimony conclusively shows that he did not rely upon the promise that his stock certificates would be delivered in six to eight weeks. He testified in his deposition that Ledbetter told him that the stock certificates would not be delivered until the company registered its stock and went public, which he quoted Ledbetter as saying would happen in about six to eight weeks. Upon failing to receive his stock certificates within the six or eight-week period, plaintiff, made no effort to contact Ledbetter or any of the other defendants to ascertain why his stock certificates were not delivered. He admits this. Although he admits he had several telephone conversations with defendant Collins, he never made any effort to obtain his stock certificates. On the contrary, he wrote a letter to defendant Collins requesting him to confirm the fact that the Lakewood Bank was holding his unissued shares in trust which had been assigned to him by Arnold. This letter was dated June 30, 1970. The first time he ever requested anyone to deliver his stock certificates was on January 27, 1971, when he directed a letter to Arnold after learning that the company was in bankruptcy and demanded that his shares be issued to him or that his money be returned. Thus, we think the plaintiff's own testimony shows conclusively that he did not rely on the promise that the stock certificates would be delivered to him within six or eight weeks, and for this further reason we think his cause of action based upon the alleged false promise is untenable.
*212 We have concluded that all defendants would have been entitled to an instructed verdict had there been a conventional trial with pleading and proofs the same as shown in the summary judgment record before us. Considering the evidence in the light most favorable to plaintiff, we are convinced that plaintiff does not have a cause of action for fraudulent representation on the sale of stock, and we likewise conclude that the two-year statute of limitations bars his cause of action for fraud for failure to deliver the stock certificate within six or eight weeks.
All of plaintiff's points are overruled.
Judgment of the trial court is affirmed.