**John H. HURBROUGH, Appellant,**

v.

**Pat H. CAIN et al., Appellees.**

**No. 1155.**

Court of Civil Appeals of Texas, Tyler.

Aug. 31, 1978.

Rehearing Denied Oct. 3, 1978.

J. S. Siskind, Byrnes, Myers, Adair, Campbell & Sinex, Houston, for appellant.

D. W. Garrett, Liddell, Sapp, Zivley & Brown, G. Irvin Terrell, Baker & Botts, Houston, for appellees.

## ON MOTION FOR REHEARING

McKAY, Justice.

Our opinion delivered on July 27, 1978, is withdrawn and the following opinion substituted therefor.

This is a suit on a letter agreement filed by appellant against appellees Cain and Hankamer seeking an accounting and actual and punitive damages for breach of contract. Cain and Hankamer filed separate motions for summary judgment alleging appellant's cause of action was barred by the four year statute of limitation, and the trial court granted both motions and rendered judgment for Cain and Hankamer.

Appellant filed a sworn motion to strike portions of appellee Hankamer's brief on the ground that the deposition of appellant referred to in the brief was not before the trial court at the summary judgment hearing nor before judgment was rendered. There is no reply or counteraffidavit to the contrary; therefore, such motion is granted.

Appellant alleged that he entered into an agreement in writing with Cain and Hankamer for acquisition of certain overriding royalty interests in Anderson County; that Cain and Hankamer agreed that with respect to all leases acquired by either Cain or Hankamer within the defined geographical area within a five year period, and with

respect to all acreage then owned by them within the defined area of interest, appellant would be assigned an overriding royalty of 3% of ⅝ths, as set out in the writing; that Cain and Hankamer owned at the time and acquired subsequently numerous leases and mineral interests within the defined geographical area of interest, all of which are subject to the rights of appellant; that oil and gas has been produced from said properties, and appellant is due royalties on past production; that appellant agreed to refrain from taking leases in the area of interest and to assign to Cain and Hankamer any leases he owned in such area, and Cain and Hankamer agreed that all operations of oil and gas properties in the area by or on account of the parties would be conducted in the name of Hankamer for the five-year period; that Cain and Hankamer permitted and caused oil and gas operations to be conducted in the name of Cain, and remain in his name, to appellant's damage; that had appellant not withdrawn from any ownership or leasing activities in the area he would have received income of at least $500,000 thereafter over and above the value of the 3% royalty; that Cain and Hankamer each received substantial amounts of money from oil and gas operations to which appellant was entitled under the terms of the letter agreement.

Cain and Hankamer answered by general denial, and alleged that appellant's cause of action was barred by the statute of limitations and by equitable laches, and that the contract was void for failure of and lack of consideration; that if such contract did exist Cain and Hankamer each fully and completely performed all obligations under the contract.

The letter agreement follows:

"August 19, 1969

"Mr. Curtis Hankamer
714 Houston Bank and Trust Bldg.
Houston, Texas 77002

"Dear Curtis:

"In connection with the new test well proposed in the Boggy Creek Field, my brother and I hereby forfeit any rights in the area except for the agreements set forth as follows:

"1. The area of interest is South ⅔rds of the David Roberts Survey, Abstract 662, East ¾ths of the D. Clark Survey, Abstract 181, East ¾ths of the John Trimmier Survey, Abstract 773, and West ¾ths of the A. B. Patton Survey, Abstract 649, all in Anderson County, Texas.

"2. I will make available all my files relating to the area.

"3. On all leases acquired by you and/or Pat H. Cain or anyone else connected with either of you, within the area of interest, within a 5 year period, and all acreage now owned by the same parties within the area of interest, I shall be assigned an overriding royalty of 3% of ⅝ths, free and clear of all cost and expenses. However, in the event another lease or mineral owner participates in a well, then my royalty will be proportionately reduced. For instance, if Burk Royalty participated on a 50–50 basis on the Cook Lease, then my overriding royalty would be reduced to one and one-half (1½%) on that lease. Conversely, as long as you and your associates own 100% of the working interest, regardless of the net amount then I am to receive the 3% of ⅝ths override.

"4. The operations are to be in the name of Curtis Hankamer.

"5. I shall be entitled to a copy of logs and other related data on all wells along with copies of access to the area at any time.

"6. I will refrain from taking leases in the area and any leases that I now own, if in effect, will be assigned to you and Pat Cain, subject to the overriding royalty in the amount as above provided.

"If the above is acceptable to you and Pat Cain, please sign in the space provided below and have Pat Cain execute, returning two completed copies for my and my brother's files.

"The production payment owned by A. D. Hurbrough, Jr. is not affected by this agreement.

"Yours very truly,

/s/ John H. Hurbrough

John H. Hurbrough

/s/ A. D. Hurbrough

A. D. Hurbrough Jr.

"Accepted And Agreed To this 28th day of August, 1969

/s/ Curtis Hankamer

Curtis Hankamer

/s/ Pat H. Cain

Pat H. Cain"

Appellant's original petition was filed on May 20, 1976.

In answer to interrogatories Cain stated that "at some point during the five-year period specified in the August 19, 1969 letter, I jointly operated the following wells on leases at the times indicated . . ." Then listed were (a) drilling of a dry hole on the Beard lease in September 1971; (b) drilling of another dry hole on the Beard lease in October 1971; (c) drilling of a dry hole on the Cook lease in May 1972; (d) the drilling but not the completion of the Daly No. 1 well in November 1973; and (e) the Todd A lease effective June 1, 1973, with two wells drilled between June 1, 1973, and the end of the five-year period, the Todd A. No. 4—dry hole and Todd A 5 completed as an oil well.

Cain further answered interrogatories that as of August 19, 1969, he did not own any working interest in the "area of interest," but that subsequent to that date he acquired a working interest in (a) 50% of the working interest in the Daly lease by assignment dated March 12, 1970, which interest was later reduced to ¼th; (b) 50% working interest in the Cook lease by assignment dated March 12, 1970, later reduced to ⁶/₁₆ths; (c) 50% working interest in the Beard lease by assignment dated March 12, 1970, later reduced to ⁵/₁₆ths; (d) 50% working interest in the Gouger lease by assignment dated March 12, 1970, which was later reduced to ⁶/₁₆ths; (e) 50% working interest in the Todd B lease by assignment dated June 1, 1973; (f) 50% working interest in the Todd A lease by assignment dated June 1, 1973, and (g) a working interest in a few short-term leases on the Peter Holloway, Comer Todd and W. T. Todd tracts acquired during the five-year period, which leases were allowed to expire through nonproduction. Cain stated he had not taken any oil or gas from any lease in the "area of interest" over the last ten years for his own account, but that "all oil production currently attributed to my account is being sold to Exxon Pipe Line Co.," and all casinghead gas is used for lease fuel and being flared.

Cain further said he had not personally made royalty payments, and that the value, to him, of oil and gas produced from the "area of interest" from August 19, 1969, to present (November 1976) "is a substantial net loss."

Cain's affidavit in support of his motion for summary judgment states that as of August 19, 1969, he did not own any lease or acreage within the "area of interest"; that during the five-year period specified by the letter agreement he acquired from persons other than Hankamer the following leases and acreage within the "area of interest" on dates indicated: (1) Peter Holloway lease originally obtained on December 30, 1969, and allowed to expire nine months thereafter; obtained again on October 8, 1970, expiring six months thereafter; (2) A. E. Todd Estate B lease—originally acquired on March 10, 1970, expiring 90 days thereafter; obtained again on June 30, 1970, expiring 90 days thereafter; (3) W. T. Todd, et al., lease of 197 acres in the David Roberts Survey A–662—originally acquired March 10, 1970, expiring 90 days thereafter; acquired again on June 30, 1970, expiring 90 days thereafter; (4) W. T. Todd lease of 100 acres in the A. B. Patton Survey A–649— originally acquired on March 17, 1970, expiring 90 days thereafter; acquired again on June 30, 1970, expiring 90 days thereafter. Cain further states in his affidavit that he first became an operator of a lease in the "area of interest" during the five-year period stated in the letter agreement with operations in his name during September 1971.

Hankamer's affidavit in support of his motion for summary judgment states that as of August 19, 1969, he owned leases and acreage within the "area of interest" specified in the letter agreement as follows: (1) the first Peter Holloway lease; (2) J. F. Roberts lease; (3) the first A. E. Todd "B" lease; (4) A. E. Todd Estate "A" lease; and (5) E. L. Daly lease; that on August 19, 1969, and for at least six months thereafter, (1) the J. F. Roberts lease and the (2) A. E. Todd Estate "A" lease were producing oil or gas on which revenues were being received.

The Hankamer affidavit further says that during the five-year period specified in the August 19, 1969, letter agreement he acquired the following leases and acreage within the "area of interest" at the times indicated: (1) a second separate Peter Holloway lease—acquired on December 30, 1969, expiring nine months thereafter; (2) a second separate A. E. Todd Estate "B" lease—originally acquired on March 10, 1970, expiring 90 days thereafter; acquired again on June 30, 1970, expiring 90 days thereafter; (3) W. T. Todd, et al., lease of 197 acres in the David Roberts Survey A-662—originally acquired on March 10, 1970, expiring 90 days thereafter; acquired again on June 30, 1970, expiring 90 days thereafter; (4) J. C. Beard tract—during the period from September 1, 1969, through September 1, 1970, he acquired 37 leases in this tract; (5) J. J. Gouger tract—during the period from September 1, 1969, through September 1, 1970, he acquired 17 leases in this tract; (6) W. L. Cook lease—acquired on December 11, 1969; (7) W. T. Todd lease of 100 acres in the A. B. Patton Survey A-649—originally acquired on March 17, 1970, expiring 90 days thereafter; acquired again on June 30, 1970, expiring 90 days thereafter.

There is no answer nor affidavit in behalf of appellant in reply to the motion for summary judgment.

Appellant brings two points of error—first, that an affirmative defense of limitations is insufficient to support summary judgment, and, secondly, that the summary judgment proof failed to establish as a matter of law that there were no genuine issues of fact.

Appellant contends that an affirmative defense of limitations is insufficient to support a summary judgment, and argues that since no dates appear in his petition which affirmatively show that his cause of action is barred appellees may not rely on limitations as a bar to his suit. Appellant maintains that appellees should have specially excepted to his petition because it lacked the necessary dates, and that only when the dates of the transactions relied upon appeared in his petition could appellees assert limitations as a bar to his cause of action. We find no merit in this contention.

■ An affirmative defense of limitations will support a motion for summary judgment. *Uniroyal, Inc. v. Vega*, 455 S.W.2d 783, 784 (Tex.Civ.App.—San Antonio 1970, no writ); *Gossett v. Tidewater Associated Oil Co.*, 436 S.W.2d 416, 421 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); *Jenkins v. Kimbro*, 380 S.W.2d 189, 190 (Tex.Civ.App.—Austin 1964, writ dism'd); *Simpson v. Simpson*, 380 S.W.2d 855, 859 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); *Zapffe v. McElroy*, 364 S.W.2d 299, 301 (Tex.Civ.App.—Dallas 1963, no writ); McDonald, Texas Civil Practice, sec. 17.26.2, at 135 (1971).

We turn now to appellant's second point in which he contends that the summary judgment proof failed to establish as a matter of law that there were no genuine issues of fact. Art. 5527, Tex.Rev.Civ.Stat., provides that a suit upon a written contract shall be commenced within four years after the cause of action shall have accrued.

■ A defendant moving for a summary judgment has the burden of establishing as a matter of law that there are no genuine issues of fact as to any essential element in the plaintiff's cause of action. *Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex. 1970); Rule 166–A, T.R.C.P. The letter agreement required the parties to perform certain obligations during the period from August 19, 1969, to August 19, 1974. Ap-

pellant alleged that Cain and Hankamer breached certain parts of the agreement, and filed his suit on May 20, 1976. We are concerned here with when appellant's cause of action accrued, and, therefore, when limitations began to run.

The general rule is that a cause of action accrues and limitations begin to run at the time of the breach of a contract. *Shipp v. O'Dowd*, 454 S.W.2d 845, 847 (Tex. Civ.App.—Waco 1970, writ ref'd n. r. e.); *Maddox v. Oldham Little Church Foundation*, 411 S.W.2d 375, 381 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.); 37 Tex.Jur. 2d Limitations of Actions, sec. 79, p. 220.

"Where plaintiffs' pleading shows on its face that the suit was not filed within the statutory period, plaintiff is required 'to allege such wrongful conduct', as against the plea of limitation, as will entitle him to recover; and mere failure to disclose a cause of action, or mere concealment, is not fraudulent concealment. *Owen v. King*, 130 Tex. 614, 111 S.W.2d 695, 696. It is incumbent upon plaintiffs to 'either allege a fraudulent concealment' or facts which in law would take the cause of action out of the bar of the statute. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 723." *Shipp v. O'Dowd*, supra.

The appellant here did not allege there was fraudulent concealment or other fraud perpetrated upon him by Cain or Hankamer which would or might have affected the date of accrual of his cause of action and the beginning of the limitation period. Nor does appellant allege there was any concealment of the actions of Cain and Hankamer. There is no pleading alleging a fiduciary relationship.

The record discloses that all of the interest either owned or acquired by Hankamer was owned or acquired more than four years before appellant filed this suit. A careful reading of the record reveals that the two leases in which Cain acquired a working interest in 1973 were acquired from Hankamer, and that Hankamer had acquired such leases more than four years before the filing of appellant's suit.

The letter agreement is silent as to the time of performance by Cain and Hankamer, i. e., when they were to convey to appellant such overriding royalty interest as set out in the letter. The language of the letter agreement is, "On all leases acquired by you [Hankamer] and/or Pat H. Cain or anyone else connected with either of you, within the area of interest, within a 5 year period, and all acreage now owned by the same parties within the area of interest, I shall be assigned an overriding royalty of 3% of $\frac{8}{8}$ths free and clear of all costs and expenses." It is well settled that where a contract does not fix a time for performance the law allows a reasonable time for performance, and a reasonable time depends upon the circumstances in each case. *Houston County v. Leo L. Landauer & Associates, Inc.*, 424 S.W.2d 458, 463 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); *Dauray v. Gaylord*, 402 S.W.2d 948, 952 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.). However, the rule in Texas is that time is of the essence in a contract for the sale of a mineral interest. *Campbell v. Barber*, 272 S.W.2d 750, 752 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.); *Herber v. Sanders*, 336 S.W.2d 783, 784 (Tex.Civ.App.—Amarillo 1960, no writ), and in our view time would be of the essence in a contract to convey a mineral interest as is involved here. Under the record here presented, with time being of the essence, it is our view that Cain and Hankamer would have been obligated to convey the mineral interest to appellant, under the letter agreement, within a reasonable time and that such reasonable time would not have extended the time of performance so as to defeat the plea of limitations. There is nothing in the record to indicate there was any problem or difficulty to prevent Cain and Hankamer from conveying an overriding royalty interest to appellant within a reasonable time after the execution of the agreement or the acquisition of any lease. We hold that a reasonable time had expired before the beginning of the limitation period.

A reasonable time has been defined as "such time as is necessary conveniently to do what the contract requires should be done. . . . such time as may be necessary in the circumstances for a reasonably prudent and diligent person to do what the contract requires him to do, having due regard for the rights of, and the possibility of loss to, the other party." 17A C.J.S. Contract § 503(4), p. 788.

In any event appellant was to be the grantee of a conveyance of an overriding royalty interest within a reasonable time from the execution of the letter agreement, and within a reasonable time after Cain or Hankamer acquired additional leases in the area of interest. When no such conveyances were made and delivered to appellant within a reasonable time he could not wait more than four years thereafter to bring his suit without suffering the bar of the statute of limitations. It is said in *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 16 (1957): ". . . the fact that the law recognizes an implication of reasonable time of performance in a given contract does not mean that the latter is necessarily indefinite in this behalf so as to escape the statute."

Cain's answers to interrogatories reveal that he jointly operated some wells or drilled wells which included "(d) the drilling but not the completion of the Daly No. 1 well in November 1973; and (e) the Todd A. lease effective June 1, 1973, with two wells drilled between June 1, 1973, and the end of the five-year period, the Todd A No. 4 dry hole and Todd A 5 completed as an oil well." Cain further stated in his answers to interrogatories that he acquired a working interest in "(e) 50% working interest in the Todd B lease by assignment dated June 1, 1973; (f) 50% working interest in the Todd A lease by assignment dated June 1, 1973." We hold that under the record it appears that the statute of limitations had not run on these interests as to Cain even though the interests were acquired by assignment or conveyance from Hankamer.

The summary judgment rendered by the trial court in favor of Hankamer is affirmed; the summary judgment rendered in favor of Cain insofar as it applies to the working interest in the Daly No. 1 well, the Todd B lease and the Todd A lease is reversed, and as to such interests the cause is remanded; in all other respects the judgment in favor of Cain is affirmed.

Affirmed in part and reversed and remanded in part.