**Carl J. MARTIN and Don Clark, Plaintiffs–Appellants,**

v.

**MBANK EL PASO, N.A., Defendant–Appellee.**

No. 90–8478.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1991.

---

Gordon Stewart, Schwartz, Earp, McClure, Cohen & Stewart, El Paso, Tex., for plaintiffs-appellants.

William Royal Furgeson, Jr., Kemp, Smith, Duncan & Hammond, El Paso, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GOLDBERG, and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants Martin and Clark present eleven issues on appeal. We find ten of the eleven issues well nigh onto frivolous, as explained in Judge Bunton's order denying the Appellants' motion for judgment notwithstanding the verdict and motion for new trial:

> This suit involved an extremely profitable money-making venture gone awry.... Each side jockeyed to place the white hat upon its own head and the black hat elsewhere. Unfortunately, the clouds of dust left in the wake of thundering hooves obscured the clear picture each side sought to present. In the end, the jury placed the Defendant upon the white steed riding off into the sunset and left the Plaintiffs without the financial gain or reimbursement they vigorously and skillfully sought. Although a different jury on a different day might have reached a dissimilar verdict, evidence existed to support the verdict reached by the jury....

We do not discuss ten of Appellants' issues, but do believe that Appellants' concern regarding the district court's jury instruction on the issue of fraud merits discussion. Because we find the error in the instruction harmless, we affirm.

## I. BACKGROUND

Appellants Carl J. Martin ("Martin") and Don Clark ("Clark") were business associates of Lee M. Rogers ("Rogers"), a currency broker. The contact between Rogers on the one hand, and Martin and Clark, on the other, centered on Rogers' need for investment capital to fund potential currency transactions. Martin and Clark had created a corporation to facilitate these currency transactions and made Rogers an officer of the corporation. Although Martin and Clark had provided "earnest money" to Rogers several times before the transaction at issue and the parties had agreed to share any profits from the contemplated transactions, Rogers never completed even one transaction.

In February 1985, Rogers opened an escrow account at MBank El Paso, N.A. ("MBank") in the name of Rogers Development Corporation ("Account"). Rogers asked Martin to transfer $100,000 to the Account. In April 1985, Hector R. Gonzalez ("Gonzalez"), the MBank vice president and senior trust officer who established the Account and retained primary responsibility over it, wrote a letter to Martin's banker regarding the $100,000 requested by Rogers. The letter, which stated that it constituted a "followup" to the conversations between Gonzalez, Martin, and Martin's accountant, and Gonzalez, Martin, and Martin's banker,

> set[ ] forth the data requested by Mr. Martin relative to the need and purpose of the funds requested by Mr. Rogers.

> *PURPOSE*

> For a one hundred thousand dollar performance bond to guarantee the successful completion of a financial transaction that Lee M. Rogers is engaged in.

> *REPAYMENT*

> Total amount will be returned with earned interest calculated at overnight money market rates as soon as the financial transaction is completed; no later than 30 days from the date of receipt of funds or sooner.

> *GUARANTEE*

> Assignment of one half (½) of the interest due on the Bank Notes held in the Escrow Account of Rogers Development Corporation at MBank El Paso, N.A.

which amount to $95,000,000 and pay interest at 9% annually.

*ADDITIONAL DATA*

The other side of the financial transaction has assigned to Rogers Development Corporation said notes and said notes have been lodged in the Escrow Account of Rogers Development Corporation for safekeeping.

Plaintiff's Exhibit 1.

Martin did wire $100,000 to MBank, which deposited it in the Account. The wire transfer did not limit the use or purpose of the funds. Interestingly, MBank's trust department records show a $75,000 overdraft in the Account at the time it received the wire transfer from Martin. After Martin determined that Rogers would or could not consummate the transaction, Martin demanded $100,000 plus one-half of the interest due on the bank notes referenced in the letter from MBank, but MBank did not respond to Martin's request.

Martin and Clark [1] then sued MBank for breach of contract, breach of fiduciary duty, fraud, negligence, conversion, civil conspiracy, and civil RICO. Appellants alleged that MBank, acting through Gonzalez, made commitments and representations to Martin to induce Martin to send the money to MBank so that MBank could cover the overdraft in the Account. Appellants also argued that the letter constituted a contract creating an escrow arrangement with MBank as Martin's escrow agent and, further, that Martin relied on the assurances contained in the letter, which were false. MBank endeavored to show through the testimony of Gonzalez and Rogers that the $100,000 deposited in the Account simply represented advances for Rogers' use in completing the currency transaction.

Martin and Clark stipulated to the dismissal of their civil conspiracy claim, and the district court dismissed the civil RICO claims under Federal Rule of Civil Procedure 12(b)(6), but allowed the state law claims to go to the jury. The district court denied MBank's motion for directed verdict, and the Plaintiffs' motion for directed verdict. The court submitted the case to the jury on special interrogatories and, based on the jury verdict, entered a take nothing judgment against Plaintiffs. The court subsequently denied Plaintiffs' motions for judgment notwithstanding the verdict and new trial. This appeal ensued.

## II. DISCUSSION

■ Texas case law does not require a plaintiff to show the reasonableness of its reliance on a misrepresentation to prove fraud. Rather, Texas courts simply demand proof that the "party acted in reliance upon the [false] representation." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977)); *see Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1298–99 & n. 34 (5th Cir.1988), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).

In its instructions to the jury, the court explained that

[i]n order for Martin and Clark to prove fraud, they must satisfy each of five essential elements by a preponderance of the evidence. One, that MBank, through Gonzalez, made the representations alleged by Martin and Clark, and that such representations were both material and false;

Two, that MBank, it [sic] officers, employees or agents knew that such representations were false when they were made or else made such representations recklessly and without regard to truth or falsity;

Three, that Martin and Clark *reasonably relied on the representations* and were deceived by them;

Four, that the false representations were the proximate cause of injury to Martin and Clark.

---

**1.** Clark is part of this suit because he "joined [Martin] in this transaction," although he did

not interact with MBank.

. . . .

[F]raud does not exist if a misrepresentation did not induce a transaction, did not deceive the injured person or otherwise affect his or its actions. In other words, if you find the complaining party would have engaged in the transaction anyway, and that the alleged misrepresentation had no effect upon the decision, there was no reliance and there can be no recovery.

Further, the judge asked the jury whether "MBank, through the representations of Hector Gonzalez, defrauded Carl Martin? (You are instructed to keep in mind the elements of fraud, including ... *reasonable reliance* on such [false] representations to one's detriment," and the jury answered "no."

Appellants specifically objected to the inclusion of the word "reasonably" in item three of the court's instructions on fraud. *See* Fed.R.Civ.P. 51. Appellants now argue that the district court erred in including the "reasonable reliance" language in the instruction and the special interrogatory on fraud because Texas law does not require proof of reasonable reliance on the misrepresentation. We agree. Instructing and questioning on reasonable reliance constituted error because it misstated Texas law and required Martin and Clark to carry an unnecessarily heavy burden on the reliance element of their common law fraud claim.

◼ Appellants argue that the instructional error was not harmless: While the evidence possibly did not show that Appellants *reasonably* relied on MBank's representations, it certainly established that they *relied* on MBank's representations. Appellants claim that the jury would have found that MBank engaged in fraud if the judge had properly instructed the jury on the reliance element. Further, Appellants assert that the instruction prejudiced them by allowing MBank to perpetuate its theory that the Appellants were "guilt[y] by asso-

ciation" with Rogers, rather than focussing the jury on *MBank's* conduct.

Whether or not Appellants relied on MBank's representations, we find the instructional error harmless. Fed.R.Civ.P. 61. Appellants brought an independent cause of action for negligence against MBank based on, among other allegedly negligent conduct, the same "affirmative false representations" that formed the core of their fraud claim.[2] The jury found that MBank did not act "negligently with respect to Carl Martin and Don Clark."[3] Under Texas law, as explained in item two of the jury charge, fraud requires proof that the party making a representation either knew that the representation was false when made or made the representation recklessly and without regard to the truth or falsity of the representation, a *higher* standard than negligence. In a case involving allegations of both negligence and fraud, if the jury finds that the party making the representations did not even act negligently, then the jury necessarily finds that the party did not know that the representation was false and did not make the representation recklessly. *Cf. Morales v. Garijak, Inc.*, 829 F.2d 1355, 1359 (5th Cir.1987) (involving jury instructions that articulated an erroneously high standard of fault for recovery of compensatory damages for shipowner's failure to pay maintenance and cure under Jones Act).

◼ In this case, it is evidently deducible that the jury necessarily found that MBank did not possess actual knowledge or act recklessly, the second essential element of Appellants' fraud claim, because the jury found that MBank did not act negligently. *Cf. id.* (concluding that jury "necessarily indicated that it believed [Defendant] had acted unreasonably" because it found that Defendant acted arbitrarily). Of course, Texas law required that the Appellants prove each element of fraud for each alleged misrepresentation, which they plainly did not do—apart from the reliance ele-

---

**2.** Appellants' cause of action for common law fraud revolved around the statements contained in Gonzalez's letter to Martin's banker. For the text of the letter, see *supra* op. at 1279–80.

**3.** The jury also found that MBank was not grossly negligent and did not act with malice.

ment. *See Gibraltar,* 860 F.2d at 1303 n. 50. Our review of the record thus leads us to the conclusion " 'that the challenged instruction could not have affected the outcome of the case,' " and we should not reverse. *Bass v. United States Dep't of Agric.,* 737 F.2d 1408, 1414 (5th Cir.1984), *quoted in Middleton v. Harris Press and Shear, Inc.,* 796 F.2d 747, 749 (5th Cir. 1986).

### III.  CONCLUSION

For the reasons stated above, we AFFIRM.