**Kenneth R. STEPHANZ and Richard Copeland, Appellants,**

v.

**Bill LAIRD, Appellee.**

**No. 01–91–01302–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 14, 1993.

Rehearing Denied March 11, 1993.

John Roberson, Hill, Parker & Johnson, Houston, for appellant.

Gregory N. Jones, Franklin, Cardwell & Jones, Houston, for appellee.

Before COHEN, DUNN and O'CONNOR, JJ.

## OPINION

DUNN, Justice.

This is an appeal by Ken Stephanz and Richard Copeland from a judgment, based on jury findings, in favor of the appellee, Bill Laird. We reverse the trial court's judgment and render judgment that the appellee take nothing.

The jury found for Laird and against Messrs. Stephanz and Copeland for breach of fiduciary duty; against their company, Union Ridge Oil and Gas Corporation (Union Ridge) for breach of contract; and against Stephanz and Union Ridge for fraud and fraud in a stock transaction. Laird was awarded damages from Copeland for breach of fiduciary duty, and from Stephanz and Union Ridge, jointly and severally, for fraud and fraud in a stock transaction. Laird also recovered exemplary damages from Stephanz for intentional breach of fiduciary duty and fraud committed with malice, from Union Ridge for fraud committed with malice, and from Copeland for intentional breach of fiduciary duty. The court also awarded Laird attorneys' fees.

Union Ridge, currently in bankruptcy, is not part of this appeal pursuant to an order of severance signed by the trial court on October 4, 1991.

In 21 points of error, Stephanz and Copeland contend the trial court erred in failing to grant a JNOV and in entering judgment based upon the jury's findings of the existence of a partnership, a breach of fiduciary duty, fraud in a stock transaction, and common-law fraud. They also attack the legal and factual sufficiency of the evidence to support the various findings of the jury.

Before November 1988, the appellee, Bill Laird, was employed as an executive at Union Texas Petroleum, an independent oil and gas operation in Houston. While he had only been with Union Texas Petroleum for four years, he had been involved in the oil and gas industry for 25 years.

Laird testified that in the fall of 1988, he was contacted by a friend, James Short, who told Laird that Stephanz, Copeland, and Short were looking for someone to do new project development for Union Ridge. Laird told Short that he was not interested in changing jobs, but he would be willing to listen to whatever Short's partner, Stephanz, had to say if there was a substantial offer, containing an ownership interest in the company.

Stephanz, Copeland, and Short were the sole shareholders, as well as officers and directors, of Union Ridge, a corporation based in Ann Arbor, Michigan. Stephanz was chairman of the board and chief executive officer; Copeland and Short were vice-presidents.

On October 3, 1988, Stephanz first spoke with Laird about the possibility of joining Union Ridge to open a business development office in Houston. Laird told Stephanz that he would only be interested if he had a 25 percent ownership in the company, but Stephanz told Laird that his request was not feasible.

Laird testified that Stephanz never told him that Union Ridge was losing money, and if he had, there never would have been a deal. Laird also testified that Stephanz told him that Union Ridge was ready to move forward, and to go after projects larger than $1,000,000. However, Stephanz testified Laird was aware Union Ridge was a start-up company with negative cash flow.

After the negotiations were complete, at Laird's request, Stephanz prepared a draft of their agreement. Laird's attorney reviewed the draft before Laird signed it. Laird testified that the references to "partner" in the agreement were important to him and reflected his understanding of their agreement. Stephanz testified that it was clear to him that he was offering Laird an executive position with Union Ridge. Laird would be paid a bonus and a salary, and would also have the opportunity to earn stock options.

Laird had worked for Union Ridge for nearly 18 months when he was terminated in May 1990. Stephanz testified that Laird's performance was deficient in a number of areas and this deficiency was preventing Union Ridge from moving forward as planned. Stephanz and Copeland met with Laird in Houston and attempted to restructure their deal in lieu of terminating him. Laird rejected their several proposals and thus was terminated.

Laird filed suit against Union Ridge, Stephanz, and Copeland for breach of contract, breach of fiduciary duties, common-law fraud, and violations of the stock fraud statute. Laird sought actual and exemplary damages for these causes of action. The jury found for Laird on all of his causes of action. In the resulting judgment, Laird abandoned the breach of contract theory and elected to recover on the tort theories.

The appellants attack both the legal and factual sufficiency of the evidence to support the jury findings. By attacking the legal sufficiency of the evidence to support an adverse finding on issues upon which they did not have the burden of proof, the appellants must demonstrate on appeal that no evidence supports the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.1983). To prevail on a factual insufficiency point of error, the appellants must prove that the evidence to support the finding is so weak that the finding is clearly wrong or manifestly unjust. See generally Pool v. Ford Motor Co., 715 S.W.2d 629, 634–35 (Tex.1986).

In determining whether there is legally sufficient evidence to support the jury's findings, the appellate court must consider only the evidence and inferences which tend to support such findings and must disregard all evidence and inferences to the contrary; if there is any probative evidence which supports the jury's findings, the "no evidence"[1] points of error must be overruled. *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex. 1987); *Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 154 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

If the evidence offered furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact, it amounts to more than a scintilla of evidence and the no evidence challenge fails. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

When reviewing for factual insufficiency of the evidence, the court of appeals must examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). When an appellate court reverses a case on grounds of factual insufficiency, it must detail what evidence it considered in deciding that the evidence was factually insufficient. *Pool*, 715 S.W.2d at 635. The standard of review requires the appellate court to set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust in light of all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The appellants argue, in their first two points of error that the finding of a fiduciary relationship was error because no partnership existed among Stephanz, Copeland, Short, and Laird. The pivotal question is whether the agreement between the parties is an employment agreement or a partnership agreement. As the appellee was seeking to establish a partnership, he had the burden of proof. *Rogers v. Butler*, 563 S.W.2d 840, 842 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.). The appellants argue that there was no evidence to support the jury's finding of a partnership because the November 1, 1988, agreement established, as a matter of law, an employment relationship, not a partnership.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). If the written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.* Whether a contract is ambiguous is a legal question, reviewable by an appellate court in light of the circumstances present when the parties entered into the contract. *Id.* at 394; *R & P Enter. v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980).

The definition of "partnership" in the statute, and the official comments to that statute, indicates that a partnership can be established between two or more persons who carry on a business for profit. Tex.Rev.Civ.Stat.Ann. art. 6132b, § 6(1) (Vernon 1970). Words used by the parties in a contract do not necessarily control the substance of the relationship, nor do the terms used by the parties in referring to the arrangement. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 288 (Tex.1978). Persons who intend to do the things that constitute a partnership are partners whether their expressed purpose was to create or avoid the relationship. *Taylor v. Lewis*, 553 S.W.2d 153, 158 (Tex.

---

**1.** No evidence points of error must be sustained when the record discloses one of the following:

1. a complete absence of evidence of a vital fact;

2. the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact;

3. the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or

4. the evidence establishes conclusively the opposite of a vital fact.

*Cecil v. Smith*, 804 S.W.2d 509, 510 n. 2 (Tex. 1991); *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.* 793 S.W.2d 660, 666 n. 9 (Tex.1990); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *see also Coastal Plains,* 572 S.W.2d at 287.

The essential elements of a partnership agreement, whether implied or express, are: (1) a community of interest in the venture/partnership; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise. TEX.REV. CIV.STAT.ANN. art. 6132b, § 6(1); *Coastal Plains,* 572 S.W.2d at 287; *Taylor v. GWR Operating Co.,* 820 S.W.2d 908, 911 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Where any one of these elements is absent, no partnership exists. *See Federal Deposit Ins. Corp. v. Claycomb,* 945 F.2d 853, 858 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992).

Plaintiff's exhibit one, the November 1, 1988, letter from Stephanz to Laird, offers Laird the position of vice-president, business development, of Union Ridge Oil and Gas Corporation. Stephanz signed the letter, written on Union Ridge letterhead, in his capacity as chairman and chief executive officer of Union Ridge. Under the terms of this offer, Laird was to establish a Houston office for Union Ridge and was to be part of a four-person executive team, sharing in the decision-making and management of the corporation. He also received stock options exercisable at varying intervals, provided he was still with the corporation.

The jury heard evidence that Union Ridge was a corporation and that Stephanz, Copeland, and Short were each shareholders and directors. Stephanz testified that Union Ridge had never been run as a partnership, but rather is a formal corporation. In oral argument, Laird's counsel admitted that there was no written partnership agreement, but contended Union Ridge Oil and Gas Corporation should be treated as a partnership and that Laird was a partner along with Stephanz and Copeland. No evidence was presented that Laird shared any of the losses or liabilities, nor were there other indicia of a partnership. Rather, all of the evidence pointed to the existence of a corporate form.

As proof that plaintiff's exhibit one established a partnership rather than a strict employment relationship, Laird refers to language in the letter that provides a portion of the salary he is to receive will be "treated as an advance against future partner distributions. This means that any accrued difference will be paid first to the other partners before additional distribution will be made to you [Laird]." The letter goes on to state that the bonuses Laird is scheduled to receive "will be considered as an advance against future partner distributions."

The appellants note that the letter also contains language that refers to "the specifics of our employment offer" and that in order for Laird to receive the bonuses, he must "be an employee of Union Ridge through at least January 1990." Stephanz testified that he was offering Laird employment as an executive of the corporation to be paid a salary and the opportunity to earn stock options.

Copeland testified that he was personally liable on $1,000,000 of Union Ridge notes, had put $63,000 into the corporation, had personal notes with the corporation for $320,000, and would share in the business losses. Copeland, Stephanz, and Laird all testified that Laird was not financially responsible for the losses of the corporation, nor was he asked to invest money or guarantee debts. Further, Copeland testified that Laird would not share in the profits of the company beyond the increase in the value of his stock.

We find there is no probative evidence to support the existence of a partnership among Stephanz, Copeland, Short, and Laird. We find as a matter of law that Laird entered into an employment relationship with Union Ridge Oil and Gas Corporation on November 1, 1988, as evidenced by the November 1, 1988, letter from Stephanz to Laird.

The appellants' first point of error is sustained.

Inasmuch as we have found there was no partnership with the attendant fiduciary duties, we therefore do not need to address whether the evidence was sufficient to sup-

port the jury's finding as raised in point of error two. We also do not need to address the correctness of the instruction submitted to the jury complained of in point of error three.

Points of error four and five and cross-point one deal with the issue of a fiduciary duty owed to Laird based upon a relationship of "peculiar confidence." The appellants argue that the jury question was improper because it was not based upon the pleadings, nor tried by consent. Laird's cross-point argues that the trial court erred by not granting his trial amendment.

Question 1A of the jury charge asked whether a fiduciary relationship existed between the parties and defined a fiduciary relationship as applying "to those who have entered into a relationship of peculiar confidence. It refers to integrity and fidelity. It contemplates fair dealings and good faith."

The pleadings allege the existence of fiduciary duties predicated upon the partnership agreement between the parties and does not refer to any other relationship of peculiar confidence. The trial court also refused Laird's trial amendment on this issue, which purported to conform the pleadings to the evidence and to support the issue of a fiduciary duty based upon a peculiar confidence.

A party may file a trial amendment only with leave of court, and the request for leave is addressed to the trial court's discretion; the trial court's ruling is reviewable only upon a showing of abuse of discretion. TEX.R.CIV.P. 63, 66; *Fincher v. B & D Air Conditioning,* 816 S.W.2d 509, 514 (Tex.App.—Houston [1st Dist.] 1991, writ denied), *cert. denied,* — U.S. —, 113 S.Ct. 77, 121 L.Ed.2d 41 (1992). The trial court may refuse a trial amendment if the opposing party presents evidence of surprise or prejudice, or the amendment is prejudicial on its face because it asserts a new cause of action or defense, and the opposing party objects to the amendment. TEX.R.CIV.P. 66; *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990); *Alamo Bank of Texas v. Palacios,* 804 S.W.2d 291, 293–94 (Tex.App.—Corpus Christi 1991, no writ).

Evidence relevant to other pled causes of action, which is admitted without objection, does not amount to trial by consent of the newly requested cause of action raised by the trial amendment. *Wendell v. Central Power & Light Co.,* 677 S.W.2d 610, 617 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The rules provide for trial by consent; however, "the rule is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unpleaded issue. It is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation." *Jay Fikes & Assoc. v. Walton,* 578 S.W.2d 885, 889 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Watts v. St. Mary's Hall, Inc.,* 662 S.W.2d 55, 58 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.).

Inasmuch as we have previously found that no partnership existed and therefore there was no breach of a fiduciary duty based upon such a relationship, we must examine whether there was a fiduciary relationship beyond that which would flow from a partnership. A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship. *American Medical Int'l v. Giurintano,* 821 S.W.2d 331, 339 (Tex.App.—Houston [14th Dist.] 1991, no writ). It exists where a special confidence is placed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing confidence. *Id.*

The supreme court has recognized that fiduciary duties may arise in the context of informal moral, social, domestic, or personal relationships in which one person trusts and relies on another. *Crim Truck & Tractor Co. v. Navistar Int'l,* 823 S.W.2d 591, 594 (Tex.1992). However, a fiduciary relationship is an extraordinary one and will not be lightly created; the mere fact that one subjectively trusts an-

other does not, alone, indicate that he placed confidence in another in the sense demanded by a fiduciary relationship, because something apart from the transaction between the parties is required. *Giurintano*, 821 S.W.2d at 339. Further, when constructive fraud is involved, the complaining party must show a relationship of trust and confidence between the parties. *Id.* The relationship need not be formal; however, absent the demonstration of a formal fiduciary relationship, the evidence must show that the dealings between the parties continued for such a time that one party is justified in relying on the other to act in his best interest. *Id.; Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 416 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

█ There is no evidence to support a theory that Laird had some independent basis for establishing a fiduciary relationship with either Stephanz or Copeland. The parties entered into an arms-length business transaction with sophisticated parties on both sides of the bargaining table. There is also no suggestion in the evidence that the parties had a long-term relationship giving rise to fiduciary duties.

The appellee argues that support for the jury's finding comes from the relationship shared by Short and Laird, which carries over into the relationship between Laird, Stephanz, Copeland, and Short. We disagree. Short was never a defendant in this case, and given the narrow application of fiduciary duties arising from informal relationships, it would not be appropriate to extend any fiduciary duty, if such existed between Laird and Short, to Laird, Stephanz, and Copeland. Laird also argues that further indications of the peculiar confidence held by the parties lies in the fact that he was in charge of the Houston office. We find that there is no evidence to support any possible fiduciary duties among Laird, Stephanz, and Copeland. Because we find there was no evidence, we do not address the factual sufficiency point of error.

We find the trial court did not abuse its discretion when it refused the trial amendment. TEX.R.CIV.P. 66. We overrule the appellee's cross-point one.

We sustain the appellants' points of error four and five and find that the court erred in submitting to the jury the question of a relationship of peculiar confidence as it was not supported by the pleadings or tried by consent.

Because we find, as a matter of law, that there is no partnership or other confidential relationship giving rise to fiduciary duties, we do not need to reach the sufficiency of the evidence issues on the remaining breach of fiduciary duty points of error.

In points of error eight and nine, the appellants argue that the evidence was legally or factually insufficient to support the jury's finding against Stephanz on the common-law fraud issues.

To recover for actionable fraud, the plaintiff must prove that:

(1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury.

*Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990). The jury was instructed on these elements and further instructed regarding failure to disclose and fraud in the inducement.

Laird alleged in his petition that he was promised that

(1) he would receive part ownership of the business and would share as a partner in the profits and success of Union Ridge;

(2) that Stephanz and Copeland, and not Laird, would go off the payroll if Union Ridge went through a shortage of cash;

(3) that Union Ridge was a viable company, working to expand, wanted to open a Houston office, wanted to pursue bigger deals, had $50 million in financing lined up;

(4) that each of the partners were drawing $100,000 per year; and

(5) that the monthly salary representations in the November 1, 1988, letter was equivalent to the annual salary negotiated.

■ Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Shwiff v. Priest,* 650 S.W.2d 894, 902 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). To show constructive fraud, a fiduciary duty must exist between the parties. *Bado Equip. v. Bethlehem Steel,* 814 S.W.2d 464, 475 (Tex.App.—Houston [14th Dist.] 1991, no writ). Because we have previously found no fiduciary duty, we do not need to examine whether there is an action for constructive fraud.

■ In order for Laird to prevail on the actionable fraud cause of action, he must satisfy all elements of the tort. *Allen v. Allen,* 751 S.W.2d 567, 574 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Further, Laird must prove each element of fraud for each alleged misrepresentation. *Martin v. MBank El Paso N.A.,* 947 F.2d 1278, 1281 (5th Cir.1991); *see also Statham v. City of Tyler,* 257 S.W.2d 742, 743–45 (Tex.Civ.App.—Texarkana 1953, writ ref'd n.r.e.). Fraud is never presumed, and when it is alleged, the facts sustaining it must be clearly shown. *Fossier v. Morgan,* 474 S.W.2d 801, 803–04 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ). Laird must show that each representation complained of concerned a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation. *Id.* at 803. If the alleged fraudulent statement was a promise to take further action, there must also be proof of a present intent not to perform. *New Process Steel Corp. v. Steel Corp.,* 703 S.W.2d 209, 214 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex.1971).

The jury was asked, "[o]n or before November 1, 1988, did Kenneth Stephanz, Rich Copeland or Union Ridge make any fraudulent representations or fraudulent promises to Bill Laird in connection with his coming to Union Ridge." The jury found that only Stephanz and Union Ridge made fraudulent representations. As Union Ridge is not a party to this appeal, we look only at the alleged misrepresentations made by Stephanz.

■ As to the first statement, Laird's testimony indicates that ownership potential was material, but there is no evidence that, at the time the statement was made, it was false. *See New Process Steel,* 703 S.W.2d at 214. By the terms of the November 1, 1988, letter, Laird knew that he was not being offered an equal share in the company; he had tried unsuccessfully to negotiate a 25 percent ownership. The terms of the November 1, 1988, letter make it clear that the stock options would begin vesting in 18 months and would continue vesting for a five-year period, provided Laird was still with the company. Indeed, the November 1, 1988, letter provides for greater ownership should certain goals be met. Laird testified that ownership in the corporation was a significant concern and would be required before he would consider leaving his employment with Union Texas. Stephanz testified that it was his intention that Laird be an equity owner in the corporation, and that in his experience stock options were an incentive for an employee to work harder.

On this issue, we find no evidence of a false representation and Stephanz prevails. Therefore, we do not need to address the factual sufficiency issue under this sub-point.

There was uncontroverted evidence that Stephanz, Copeland, and Short each made $100,000 per year. Thus, if Stephanz made such a representation, it was true. Laird also testified that he was told that, in the event of a cash shortage, the other principals would take a pay cut, but that he would be protected. There is no evidence that Laird ever missed a paycheck. Thus, assuming arguendo that the statement was made, Laird suffered no injury.

As to these allegations, we find no evidence of a false representation or of injury; therefore, Stephanz prevails, and we do not address the factual sufficiency issue under this sub-point.

Stephanz admitted that he told Laird that the company wanted to open a Houston office, to move forward, and that they were

looking for larger projects. There was evidence that this was true and no evidence that it was false. Stephanz testified that the company had aggressive growth plans to take advantage of a perceived window of opportunity. He intended that Laird would acquire the new systems, which would ease the negative cash flow. Stephanz also testified that at the time Laird was hired, the company was overstaffed, but it was his intention that the company would grow to the point that the overstaffing no longer existed. None of the testimony suggests that the statements were false or that there was any intention to deceive Laird. We find no evidence to prove the elements of fraud in these statements, and Stephanz prevails on this issue as a matter of law. Because we find no evidence, we do not address the factual sufficiency issue.

Laird also complains that Stephanz misrepresented the salary provision in their agreement by expressing the salary on a monthly basis rather than on an annual basis. There is no evidence that Laird complained about this language at the time he reviewed the draft of the agreement and when he had his attorney review the draft prior to his signing. Laird argues that Stephanz' testimony regarding the negotiations illustrates that he intended to have a contract that could be terminated on one month's notice, but did not disclose that fact to Laird. Stephanz admitted that he did not affirmatively tell Laird these things, but there is no evidence that his intention at the time of the contract was to terminate Laird. Stephanz testified he told Laird that Union Ridge did not grant fixed term employment contracts. Even if it is assumed that Stephanz represented to Laird the legal effect of the terms of the letter, the fact that Laird was an experienced businessman who had his own attorney review the letter would preclude Laird's recovery on this issue. *Lewis v. River Oaks Capital Corp.*, 466 S.W.2d 348, 351 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). Therefore, we find, as a matter of law, Stephanz prevails on this issue, and do not address the factual sufficiency issue.

Laird further contends that Stephanz did not tell him he was currently funding the company out of his own pocket at a rate of $100,000 per month. In Laird's perception, this would mean that the company was not "viable" as he had inferred from their conversations. Stephanz testified he told Laird of the cash flow problems and how the company was being funded. Laird testified that this would be a material fact upon which he would have relied when making his decision to change jobs.

■■ A failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary relationship exists between the parties. *Tempo Tamers Inc. v. Crow–Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Because there was no fiduciary or confidential relationship between the parties and there were no circumstances which would otherwise impose a duty to speak, Stephanz had no affirmative duty to disclose. *Haney v. Purcell Co., Inc.*, 796 S.W.2d 782, 785 n. 1 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Laird testified that Stephanz did not affirmatively represent the corporation was viable; rather, this is what he inferred from the discussions and negotiations. Any representation of this nature would merely be opinion, in which case there would be no actionable fraud. *Ryan v. Collins*, 496 S.W.2d 205, 210 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Fossier*, 474 S.W.2d at 803.

Stephanz testified that start-up companies frequently experience negative cash flow and that Union Ridge was aggressively pursuing gathering systems to purchase and the funding with which to purchase those systems. The company had a number of assets and 35 employees. Laird contends that the mere fact the company was in a negative cash flow position was sufficient, in his mind, to indicate the company was in trouble.

■■ Laird argues that, by failing to tell Laird of the cash flow situation, Stephanz breached a duty to disclose. However, the evidence shows that at the point these representations were made, the parties were both sophisticated businessmen in an arms-length negotiation. Laird is not complain-

ing about Stephanz' failure to set the record straight at some later point in their relationship. Assuming that Stephanz did not disclose, we find no evidence establishing other circumstances that would impose a duty upon Stephanz to affirmatively disclose his funding of the company.

We sustain the appellants' points of error eight and nine.

 One of Laird's causes of action was based upon TEX.BUS. & COM.CODE ANN. § 27.01 (Vernon 1987), fraud in a transaction involving stock in a corporation. The appellants' point of error 10 addresses whether TEX.BUS. & COM.CODE ANN. § 27.01 (Vernon 1987) applies to this transaction whereby the appellee received stock options in Union Ridge.

The statute reads, in pertinent part,

(a) Fraud in a transaction involving ... stock in a corporation ... consists of a

(1) false representation of a past or existing material facts, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract.

TEX.BUS. & COM.CODE ANN. § 27.01(a) (Vernon 1987).

It is clear that Laird was required to meet certain conditions precedent in order for the stock options to begin vesting, among these that Laird be employed at Union Ridge for a period of 18 months. These conditions precedent set out in the employment letter were not satisfied. We hold that in this case, the statute does not apply. *See Stanfield,* 462 S.W.2d at 271–72.

We sustain point of error ten.

We reverse the trial court's judgment on the causes of action for breach of fiduciary duty, common law fraud, and statutory fraud. Therefore, it is not necessary to address the remaining points of error related to damages.

We render judgment that the appellee take nothing.

We reverse the trial court's judgment on the causes of action for breach of fiduciary

duty, common law fraud, and statutory fraud. Therefore, it is not necessary to address the remaining points of error related to damages.

We render judgment that the appellee take nothing.