Rodney Earl GRIMMETT, Appellant,

v.

Billy Don HIGGINBOTHAM, Appellee.

No. 12–93–00053–CV.

Court of Appeals of Texas,
Tyler.

Dec. 29, 1994.

Opinion on Motion for Rehearing
March 31, 1995.

Tom D. Rori, Nacogdoches, for appellant.

William D. Guidry, Nacogdoches, for appellee.

Before RAMEY, C.J., and BILL BASS and HOLCOMB, JJ.

RAMEY, Chief Justice.

This is an appeal from a bench trial judgment in which the court found that a partnership relationship existed between the plaintiff, Billy Don Higginbotham ("Higginbotham") and the defendant, Rodney Earl Grimmett (Grimmett") in the ownership of a Nacogdoches air conditioning firm, REG Enterprises ("REG").[1] The trial court adjusted the partnership property and accounts and awarded Higginbotham $6,000 in exemplary damages. Thereafter, the court made its Findings of Fact and Conclusions of Law. Grimmett has assigned 15 points of error. The underlying issue is whether REG was a sole proprietorship owned by Grimmett or a partnership of Grimmett and Higginbotham. We reverse and render the trial court judgment that Higginbotham and Grimmett formed a partnership relationship in the ownership of REG and that Higginbotham recover exemplary damages but remand the case to the court to make a final financial accounting between the parties.

Grimmett's first point asserts that because there was no evidence of an agreement to share the losses of the alleged partnership, the trial court erred in finding that a general partnership existed between the parties. In reviewing a "no evidence" point, the appellate court considers only evidence and reasonable inferences therefrom, which, when viewed in the most favorable light, supports the findings of the fact finder, the trial judge,

1. The business was conducted also under the trade names of Arco, Alco and Action Repair.

and disregards all evidence and inferences which are contrary to the findings. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *McKnight v. Hill & Hill Exterminators,* 689 S.W.2d 206, 207 (Tex.1985).

The agreement to establish REG was made in June 1987. No written partnership agreement was drawn. Grimmett made various capital contributions to the business; Higginbotham made none. Higginbotham ran REG. Grimmett devoted only part of his time to REG as he had other business interests. The parties agreed to terminate their relationship in the middle of June 1990. Higginbotham continued work on existing and new contracts with REG's customers for an additional two years after the relationship between the Higginbotham and Grimmett had terminated.

■ "A partnership is an association of two or more persons to carry on as co-owners of a business for profit." TEX.REV. CIV.STAT.ANN. art. 6132b § 6(1). This relationship must be based on an agreement, which may be either expressed or implied. *Coastal Plains Dev. Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex.1978). The burden of proof of the existence of a partnership is imposed upon the party seeking to establish the relationship. *Ben Fitzgerald Realty Co. v. Muller,* 846 S.W.2d 110, 120 (Tex.App.— Tyler 1993, no writ).

■ The party asserting the formation of a partnership relationship must establish each of the following essential elements: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise. *Ayco Development Corp. v. G.E.T. Serv. Co.,* 616 S.W.2d 184, 186 (Tex.1981); *Coastal Plains Dev. Corp.* 572 S.W.2d at 287; *Stephanz v. Laird,* 846 S.W.2d 895, 900 (Tex. App.—Houston [1st Dist.] 1993, no writ).[2] If

any one of these elements is not shown, no partnership exists. *Stephanz,* 846 S.W.2d at 900. As a matter of law, there is no partnership unless each of the four elements are shown to exist. *Ayco Development Corp.,* 616 S.W.2d at 186; *Ben Fitzgerald Realty Co.,* 846 S.W.2d at 120, 121; *Corpus Christi,* 814 S.W.2d at 108.

■ Our review has disclosed no evidence of an agreement to share REG's losses. Likewise, Higginbotham has directed us to no such agreement. In his testimony, Higginbotham acknowledged there was no such understanding. Furthermore, the record is undisputed that Grimmett provided all of the capitalization and other financing, when necessary, for REG. No evidence was adduced that Higginbotham made, or was called upon to make any financial contribution to the business. The record reveals that Higginbotham was paid weekly compensation, but the amount of his wages was never affected by the financial requirements of the business. Here, an agreement to share losses was neither expressed nor implied.

Higginbotham asserts, however, that a significant amount of evidence was adduced that the parties represented themselves to be co-owners or partners in the business. Various witnesses testified that the parties represented themselves, directly or implicitly, to be partners, or the witnesses had understood the relationship to be a partnership. Likewise, numerous documents reflected the existence of a partnership.[3] These representations of partnership or of Grimmett's sole ownership was a highly disputed issue in the trial of the case. Higginbotham testified that the partnership relationship was initiated in a conversation between the parties in which it was agreed that Grimmett would be the "money man", and Higginbotham was to be the "muscles". But the element of an agreement by the parties to share losses is

---

**2.** Also, *Ben Fitzgerald Realty Co.,* 846 S.W.2d at 120; *Taylor v. GWR Operating Co.,* 820 S.W.2d 908, 911 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Corpus Christi v. Bayfront Associates,* 814 S.W.2d 98, 107 (Tex.App.—Corpus Christi 1991, writ denied).

**3.** There is significant authority that representations by the parties in documents or to third

parties that a partnership relationship exists constitutes a legal conclusion and is not determinative of the relationship. *Coastal Plains Development Corp.,* 572 S.W.2d at 288; *Ben Fitzgerald Realty Co.,* 846 S.W.2d at 121; *Murphy,* 807 S.W.2d at 613. "A duck which is called a horse does not become a horse; a duck is a duck." *Corpus Christi,* 814 S.W.2d at 108, 109 (see n. 4).

undisputedly missing; it is an essential predicate for the trial court's partnership finding.[4] Grimmett's first point of error must be sustained.

It is not necessary, therefore, to address Grimmett's second, third and fourth points of error which are additional attacks upon the trial court's finding of the existence of a partnership. Points of error thirteen, fourteen and fifteen challenge the award of exemplary damages to Higginbotham. First, exemplary damages are predicated upon the finding of partnership which gives rise to a fiduciary duty owed by Grimmett to Higginbotham which the trial court found to have been breached by Grimmett. In the light of our holding of no partnership, exemplary damages may not be awarded on that theory. Furthermore, because we have concluded that Higginbotham was not an owner of the business, there was no conversion of REG's assets by Grimmett which constituted the remaining basis for exemplary damages. Grimmett's points of error thirteen, fourteen and fifteen are sustained.

Points of error five through twelve pertain to the court's accounting related to the apportionment of the partnership assets in concluding the relationship. The trial court, before final judgment, had entered an interlocutory order requiring the parties to file their itemized supported claims and objections to their adversary's claims. These filings, certain Findings of Fact and various orders in the Final Judgment were predicated upon the court's finding that a partnership relationship existed between the parties.

It appears that the relationship between the parties was terminated on about June 15, 1990 and there was evidence that Higginbotham would work for REG at least until July 17, 1990. Unfortunately, we are unable to determine when Higginbotham began to perform work on his own account and when he commenced receiving unremitted payment directly. Likewise, we have not been able to determine the basis for the trial court's accounting findings as they might relate to Higginbotham's status as an employee, as distinguished from the court's partnership account settlement. Therefore, we must remand the trial court judgment for the sole purpose of adjusting the parties' final claims under an employer-employee relationship. Grimmett's points six, eight, ten and twelve are sustained. Points of error five, seven and nine are overruled. Likewise, quantum meruit was not plead by Higginbotham nor were there findings that the court granted any relief on that theory of recovery; Grimmett's eleventh point of error is overruled.

The judgment of the trial court is reversed and rendered except that the case is remanded to the trial court for the sole purpose of making a determination of the financial responsibility of each of the parties in concluding Higginbotham's employment relationship.

### OPINION ON MOTION FOR REHEARING

Appellee, Billy Don Higginbotham, in his Motion for Rehearing, challenges, factually, our holding that there was no evidence of an agreement that he was obliged to share the business losses of REG Enterprises. Higginbotham cites eight documents, consisting of contracts, a promissory note, a guaranty agreement, a bond, and applications for credit and insurance to support his contention that there was evidence that he was a partner or part owner of the business. Additionally, Higginbotham offers several excerpts of testimony in which Higginbotham's co-ownership of, or partnership in, the business was discussed. We are unable to agree that there is a scintilla of evidence of the requisite agreement to share the losses of the business.

As to an express agreement between Higginbotham and Grimmett to share in any operational results of the business, the only evidence was the terse testimony of Higginbotham that they had originally agreed to divide the *profits* when the company began to make money, which apparently never occurred; the record is silent as to the

---

4. Furthermore, the undisputed evidence discloses that REG operated under a corporate form of business relationship from 1988 to its termination. REG was a division of REG and Associates, Inc., a corporation, which would further insulate Higginbotham from any responsibility for losses, those being the corporation's.

terms of such agreement. Furthermore, Higginbotham admitted at another point in his testimony that he never "... discuss[ed] any type of particular arrangement ... as far as showing *profits or losses* in the business". (Emphasis added.)

As to sharing *losses*, there was no evidence of an express agreement to share *losses*. Throughout his relationship with REG, Higginbotham was compensated for his services by fixed weekly wages, totally unaffected by realized profits or losses. There was no evidence that Higginbotham personally paid, or, was ever asked to pay, any sum of money to any of the individuals or institutions referred to in the cited documents or the testimony above referenced in Higginbotham's Motion for Rehearing. REG's business records reflect that business losses were sustained during much of its brief history. Grimmett absorbed these losses, Higginbotham did not. Thus, there being no express agreement to share losses, and absent evidence that the parties, by their words or conduct, impliedly recognized that Higginbotham had some obligation in fact to pay any part of REG's business losses, we are unable to agree that there was a scintilla of evidence of an agreement to share losses.

The motion for rehearing is overruled.