In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00079-CV


______________________________





IN THE INTEREST OF P.D.D., A CHILD





 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 93C1350-005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 This is an appeal by Vickey Pace McAllister of an order denying her recovery of a claim
against Joel Steven Pace for unpaid health insurance premiums and unpaid medical expenses
incurred by McAllister for coverage of their child, P.D.D. The trial court ruled that the claims of
McAllister were barred under the doctrine of res judicata.

BACKGROUND OF CONTROVERSY

 McAllister and Pace were once husband and wife. A divorce was instituted by McAllister
in 1993 and granted January 31, 1994; the divorce decree recited that no children were born to or
adopted by the marriage and that none were expected. However, shortly after the divorce was
granted, McAllister discovered herself to be pregnant and she filed an action to modify in a suit
affecting the parent-child relationship. P.D.D., the child resulting from that pregnancy, was born on
October 3, 1994, and an agreed order of paternity was entered on June 30, 1995, which found Pace
to be the father and ordered him to pay child support and health insurance premiums for the child,
with uninsured medical expenses to be shared by McAllister and Pace. This same order named
McAllister managing conservator of the child with Pace as possessory conservator having standard
specified rights of possession of the child.

 At some point during 1995, McAllister and Pace re-established a joint household and lived
together without marriage until the early part of 1999, when they once again separated. In 2003,
McAllister moved to Arizona and remarried. In the Summer of 2004, McAllister and Pace
experienced some kind of disagreement concerning Pace's visitation with or possession of P.D.D.
and amicable relations between Pace and McAllister evaporated. McAllister moved her residence
without telling Pace of her whereabouts or the whereabouts of P.D.D. On November 16, 2004, Pace
filed an action for contempt to compel enforcement of his custodial rights with P.D.D. As a result
of the hearing on that motion, on March 28, 2005, McAllister was held in contempt of court and
ordered to pay Pace's attorney's fees; in addition, Pace was granted compensatory possession days
in addition to those regular days set out in the 1995 order. Writs of attachment and commitment for
McAllister were issued on April 18, 2005, but these writs were never served on McAllister. (1)

 On July 19, 2005, Pace filed a motion to modify the custody of P.D.D. McAllister responded
with a request for modification of the child support obligation, retroactive to the date of filing of the
request. A hearing on these issues was begun on August 30, 2005, but recessed before completion
of all of the evidence, the trial court indicating that it would be resumed at a later time. Instead of
a resumption of the hearing, an agreed order was entered on November 15, 2005; in the agreed order,
the previous finding of McAllister's contempt of court and the portions of the previously-entered
order granting Pace an award of attorney's fees were vacated; the orders regarding the
conservatorship and possession of and access to P.D.D. were modified to a standard possessory
order. The order concluded with the statement that "IT IS ORDERED that all relief requested in this
case and not expressly granted is denied. All other terms of the prior orders not specifically modified
in this order shall remain in full force and effect."

 On March 13, 2006, McAllister filed an application for enforcement of the support order and
for the return of items of personalty belonging to the child; specifically, McAllister sought to recover
$400.00 in unpaid child support for the month of October 2005, $37,645.28 in reimbursement of
health insurance premiums for a period beginning at the birth of the child and ending in 2003, (2) and
Pace's half of uninsured medical expenditures, the return of a pink blanket and diamond necklace
belonging to the child, and a judgment for attorney's fees incurred in bringing the action. (3) A hearing
on this claim was conducted on October 12, 2006, after which the trial court received trial briefs by
both McAllister and Pace. In its memorandum order dated February 19, 2007, the trial court
included a finding that the agreed order entered November 15, 2005, barred McAllister's claims by
res judicata. As a basis for this, the trial court found that the issues had been tried by consent in the
hearing leading to the entry of that order and that the prior order was a monumentation of a
settlement agreement between the parties which disposed of all claims between the parties prior to
the entry of the agreed order. There were no findings of fact and conclusions of law requested and
none were filed, but in recitations contained in the order, the trial court based its findings that a
settlement had occurred on the pleadings and testimony of the parties at the August 30, 2005,
hearing.

 In her appeal, McAllister maintains that: (1) Pace had never filed pleadings claiming either
res judicata or settlement prior to the hearing. Because there were no pleadings filed upon which
those affirmative defenses could have been raised, Pace was prohibited from doing so. (2) There was
no trial by consent of the issue of the health insurance premiums or settlement in the prior hearing
and resulting agreed order. (3) The trial court erred in ruling that there was a previous trial by
consent of the issue of health insurance premium reimbursement.

WERE AFFIRMATIVE DEFENSES RAISED BY PACE'S PLEADINGS?

 Rule 94 of the Texas Rules of Civil Procedure provides, in part, that "In pleading to a
preceding pleading, a party shall set forth affirmatively accord and satisfaction . . ., payment, release,
res judicata . . ., waiver, and any other matter constituting an avoidance or affirmative defense." 
Tex. R. Civ. P. 94. It has long been held that the purpose of Rule 94 is to give the opposing party
notice of the defensive issues to be tried. Land Title Co. of Dallas, Inc. v. F. M. Stigler, Inc., 609
S.W.2d 754, 756 (Tex. 1980); Hunter v. Carter, 476 S.W.2d 41, 45 (Tex. Civ. App.--Houston [14th
Dist.] 1972, writ ref'd n.r.e.); Musso v. Cronley, 422 S.W.2d 840, 841 (Tex. Civ. App.--Waco 1967,
no writ). 

 An affirmative defense does not tend to rebut factual propositions asserted by a plaintiff, but
rather it seeks to establish an independent reason why the plaintiff should not recover. Gorman v.
Life Ins. Co. of N. Am., 811 S.W.2d 542, 546 (Tex. 1991); Hamm v. Millennium Income Fund,
L.L.C., 178 S.W.3d 256, 268 (Tex. App.--Houston [1st Dist.] 2005, pet. denied).

 McAllister has argued that Pace failed to comply with the requirement of Rule 94 that the
affirmative defenses of res judicata and settlement be specially pled. 

 Although Pace's brief makes no mention of this fact, the first full paragraph in his "First
Amended Response to Motion for Enfocement [sic] and Motion to Enforce and Motion for Sanctions
Under Tex. Civ. Prac. & Rem. Code § 10.002" recites in part:

RESPONDENT would show that each of these alleged violations was fully addressed
in a hearing on August 30, 2005, by this Court and disposed of by the order of this
Court, signed by the Honorable Ralph Burgess on November 15, 2005, specifically
the final paragraph of said order on page 15 which states, "IT IS ORDERED that all
relief requested in this case and not expressly granted is denied."


 In prescribing the degree of definiteness which pleadings contain, Rule 47 of the Texas Rules
of Civil Procedure requires that they be particular enough as to "give fair notice of the claim
involved." Tex. R. Civ. P. 47. A party need not plead a cause of action and its elements with
specificity if it can be reasonably inferred from the pleadings. McNeil v. Nabors Drilling USA, Inc.,
36 S.W.3d 248, 250 (Tex. App.--Houston [1st Dist.] 2001, no pet.). Although there is no mention
of the words "barred," "claim preclusion," "issue preclusion," or "res judicata" within them, the
pleadings filed by Pace were sufficient to place McAllister on notice of the intention of Pace to
interpose the defense that the issues raised by McAllister for recovery of unpaid health insurance
premiums and medical expenses had been previously litigated in the previous hearing and were thus
not capable of being heard once again. 

 As to whether there were pleadings which raised the issue of whether a settlement between
the parties precluded recovery, it appears there were no such allegations contained in Pace's response.
Therefore, irrespective of whether this issue would fall within the terminology of accord and
satisfaction, waiver, or estoppel, there is simply no pleading conforming to the requirements of
Rule 94. Accordingly, the issue of settlement (however characterized) was not raised in the
pleadings.

TRIAL BY CONSENT?

 However, although an affirmative defense has not been pleaded, it can still be considered if,
at trial, it is tried by the consent of the parties. See Tex. R. Civ. P. 67; see also Bell v. Meeks, 725
S.W.2d 179, 179-80 (Tex. 1987). To determine whether an issue was tried by consent, the court
must examine the record not for evidence of the issue, but rather for evidence of trial of the issue.
Pickelner v. Adler, 229 S.W.3d 516, 523 (Tex. App.--Houston [1st Dist.] 2007, pet. denied); Beck
v. Walker, 154 S.W.3d 895, 901 n.3 (Tex. App.--Dallas 2005, no pet.); Stephanz v. Laird, 846
S.W.2d 895, 901 (Tex. App.--Houston [1st Dist.] 1993, writ denied); Watts v. St. Mary's Hall, Inc.,
662 S.W.2d 55, 58 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.). 

 Looking at the circumstances leading up to the hearing held on August 30, 2005, we find that
McAllister had been previously found to be in contempt; a writ of attachment had been issued; and
Pace had been awarded attorney's fees against McAllister. Pace had brought an action to modify the
conservatorship of the child and McAllister had responded by filing a motion to modify Pace's future
child support obligation. There was no mention in any party's pleadings of unpaid child support due
from Pace to McAllister nor any references to unpaid health insurance premiums to cover P.D.D.,
or health expenses which had been incurred by McAllister which had not been reimbursed to her by
Pace.

 During the hearing which ensued on that date, (4) there were mentions of the dispute concerning
the health insurance premiums and the one month's unpaid child support:

 (1) In response to direct examination by his own attorney, Pace testified that after he and
McAllister had separated in 1999, he had begun paying her $100.00 more than the court-ordered
child support. He indicated that this additional sum was what he (who was familiar with insurance
rates, having been an insurance agent) estimated to be the additional cost incurred by McAllister in
adding P.D.D. to McAllister's employer-provided medical insurance coverage.

 (2) Again in response to direct examination by his attorney, Pace, who by agreement with
McAllister, had been paying his child support directly to McAllister instead of in the fashion directed
by the order of the court, testified that he had sent the check for the one month's child support which
McAllister claimed that she had not received. He proffered the unopened envelope containing the
check which had been sent to McAllister's then last-known address in Arizona but returned by the
postal service.

 (3) During cross-examination of Pace by McAllister's attorney, the following exchange
occurred:

 Q. Do you have any idea what the health insurance costs for [P.D.D.] is
right now?

 

 A. I did check the price of a major medical policy for a child her age, and
it was somewhere in the $60.00, $70.00 range per month.

 

 Q. If you'd like to give me that information --

 

 A. Well, come see me.

 

 Q. Would it surprise you if it was more closely around $200.00 per
month?

 

 A. I guess it would.


 (4) During direct examination by her attorney, McAllister testified that although she had
heard Pace testify that health insurance for P.D.D. could be obtained for about $60.00 per month,
she had been unable to obtain it for that price. Rather, she stated that the cost to add P.D.D. to
McAllister's health insurance policy was about $451.00 per month, applying no specific figures.

 (5) During cross-examination of McAllister by Pace's attorney, McAllister testified that
P.D.D.'s health insurance was covered at that time for no additional cost through McAllister's current
husband's military retirement health insurance coverage. (5) 

 There was no testimony at that hearing concerning the time frame during which McAllister
incurred the monthly charges for health insurance for P.D.D. nor the gross amount of money
expended by McAllister for that purpose. There was also no testimony regarding any unpaid
uninsured medical expenses incurred by McAllister for P.D.D.'s care. The agreed order entered by
the trial court makes no specific reference to any then-outstanding monetary obligation. 

 The doctrine of trial by consent is not intended to establish a general rule of practice and
should be applied with care; it should never be applied in a doubtful situation. Stephanz, 846 S.W.2d
at 901. Trial by implied consent "applies only where it appears from the record that the issue was
actually tried, although not pleaded." Johnston v. McKinney Am., Inc., 9 S.W.3d 271, 281 (Tex.
App.--Houston [14th Dist.] 1999, pet. denied). "Rule 67 concerning trial by consent applies where
it clearly appears from the record as a whole that the parties tried out a controverted issue and that
the issue was fully developed. See Tex. R. Civ. P. 67; Praeger v. Wilson, 721 S.W.2d 597, 603
(Tex. App.--Fort Worth 1986, writ ref'd n.r.e.)." Fiduciary Mortgage Co. v. City Nat'l Bank of
Irving, 762 S.W.2d 196, 202 (Tex. App.--Dallas 1988, writ denied).

 Plainly, although there was evidence about the issue of the nonpayment of health insurance
premiums which arose during the hearing on August 30, 2005, it was raised primarily by Pace (who
had not paid them) and not by McAllister (the person who later sought to recover them). The
evidence concerning these insurance premiums was sketchy and incomplete at the 2005 hearing. 

 There was no trial of those issues at that time and it was error to determine that there was a
trial by consent of them.

WAS McALLISTER REQUIRED TO RAISE THOSE ISSUES?

 In the order entered by the trial court, it is noted that under the transactional approach to the
application of res judicata, "A subsequent suit will be barred if it arises out of the same subject
matter of a previous suit and which through the exercise of diligence, could have been litigated in
a prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 631 (Tex. 1992). We observe that
the bar of a claim by res judicata generally requires proof of the following elements: (1) a prior final
judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity
with them; and (3) a second action based on the same claims that were raised or could have been
raised in the first action. Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996).
Ex parte Myers, 68 S.W.3d 229, 232 (Tex. App.--Texarkana 2002, no pet.).

 The question whether res judicata applies in a given instance is a mixed question of law and
fact. Myers, 68 S.W.3d at 231; Pony Express Courier Corp. v. Morris, 921 S.W.2d 817, 820 (Tex.
App.--San Antonio 1996, no writ). When a matter involving both factual determinations and legal
conclusions is decided by the trial court, Texas appellate courts generally use an abuse of discretion
standard of review. Myers, 68 S.W.3d at 231-32. In applying this standard, we defer to the trial
court's factual determinations as long as they are properly supported by the record, and we review
its legal determinations de novo. Morris, 921 S.W.2d at 820.

 At first blush, it may appear that under a rigid adherence to the transactional approach set out
above, it was the responsibility of McAllister to raise the issue of the delinquency at the hearing in
2005. Her claims against Pace for unpaid health insurance premiums and medical expenses, through
the exercise of diligence, could have been litigated at that time. All of the issues between these
parties (both potential issues and those actually tried before the court) spring from their relationship
as the parents of the child. The parties are the same and would require no third parties to be joined.
However, the critical inquiry here as it pertains to the issue of res judicata centers upon what is the
"same subject matter." In other words, is the issue of delinquent child support within the same
subject matter as requests for modification of conservatorship or future child support obligations? 
 Chapter 155 of the Texas Family Code provides for continuing jurisdiction of family law
matters. Nevertheless, in recognition that custody matters and support matters are intended to be
independent of one another, the Legislature provided that "A court may not render an order that
conditions the right of a conservator to possession of or access to a child on the payment of child
support." Tex. Fam. Code Ann. § 153.001(b) (Vernon 2002). On the other hand, Section
157.003(a) of the Texas Family Code provides that "A party requesting enforcement may join in the
same proceeding any claim and remedy provided for in this chapter, other provisions of this title, or
other rules of law." Tex. Fam. Code Ann. § 157.003(a) (Vernon 2002) (emphasis added). Although
the law permits those kinds of actions to be prosecuted simultaneously, it does not require their
joinder. From these, one can determine that it is the intention of the drafters of the Texas Family
Code to treat the issues of current and future support, custody and visitation, and enforcement of
orders as separate and definable questions. 

 In the case at bar, the active pleadings at the time of the 2005 hearing were (1) a motion to
modify the conservatorship filed by Pace and (2) a motion to modify the future child support
obligation filed by McAllister. 

 "A determination of what constitutes the subject matter of a suit necessarily requires an
examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis
of the factual matters that make up the gist of the complaint, without regard to the form of action."
Barr, 837 S.W.2d at 630. Looking at the evidence which would be pertinent to Pace's motion to
modify the conservatorship and possession of P.D.D., it is clear that "The best interest of the child
shall always be the primary consideration of the court in determining the issues of conservatorship
and possession of and access to the child." Tex. Fam. Code Ann. § 153.002 (Vernon 2002). The
party seeking modification of a conservatorship or custody order bears the burden of proving that
there has been a material and substantial change in circumstances within the relevant time frame and
that the modification is in the child's best interest. Gardner v. Gardner, 229 S.W.3d 747, 755-56
(Tex. App.--San Antonio 2007, no pet.). 

 McAllister's responding motion to modify the decade-old order establishing Pace's child
support obligation involved other facts and other determinations. Chapter 154 of the Texas Family
Code provides extensive direction for a court to determine the amount of child support which each
support-paying parent is to pay; the primary thrust of the evidentiary hearing on a motion for 
modification of a child support obligation deals with the current income of the support-paying
parent.

 Both of the issues raised by the pleadings involve questions of the current circumstance of
the parties and seek orders to dictate future conduct. In contrast, the issue of delinquent child
support is not a question of the present circumstances of the parties or their future conduct but,
rather, the content of prior orders for support and the degree of compliance with those orders the
support-paying parent has observed in the past. The issue of support delinquencies is not the same
subject matter as present and future issues concerning child support and custody.

 This case is easily distinguishable from the circumstance in In re M.K.R., 216 S.W.3d 58
(Tex. App.--Fort Worth 2007, no pet.). In that case, a judgment for delinquent child support
payments was entered in 1993. In 2001, another judgment for child support was entered that
included delinquent payments which, although due before the 1993 order, were not mentioned in that
order. In that circumstance, the court held that the claimant for child support was obligated to raise
the question of all claims for delinquent child support which became due before the filing for
enforcement of the child support obligation because it involved the same issue: unpaid child
support. In the M.K.R. case, the 1993 order was determinative of the amount of child support
delinquency existing at the date of the entry of the order finding the amount of delinquency. Here,
there were different matters or issues which were involved. The 2005 hearing involved the issues
of custody and future support; the thrust of McAllister's 2006 motion for enforcement involved a
separate issue: unpaid child support. This Court has previously determined that even in closely-related suits between the same individuals regarding similar issues, if unlitigated claims are "not
essentially connected" to the litigated claims, then they are not barred by res judicata. In re J.G.W.,
54 S.W.3d 826, 833 (Tex. App.--Texarkana 2001, no pet.) (tort claims stemming from the actions
of the mother and her boyfriend in wrongfully taking the children and fleeing the state were not the
same subject matter of the custody dispute).

 Res judicata does not bar a litigant who did not assert an affirmative claim for relief in an
earlier action from stating a claim in a later action that could have been filed as a cross-claim or
counterclaim in the earlier action, unless the claim was compulsory in the earlier action. 
Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 207 (Tex. 1999). A claim is a
compulsory counterclaim only if 

 (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer
the subject of a pending action; (3) the claim is mature and owned by the defendant
at the time of filing the answer; (4) it arose out of the same transaction or occurrence
that is the subject matter of the opposing party's claim; (5) it is against an opposing
party in the same capacity; and (6) it does not require the presence of third parties
over whom the court cannot acquire jurisdiction. A claim having all of these
elements must be asserted in the initial action and cannot be asserted in later actions.


Id. (footnotes omitted); see also Tex. R. Civ. P. 97(a). McAllister's action for recovery of past-due
child support was not a compulsory counterclaim to Pace's motion to modify the conservatorship of
the child. 

 It was not required for McAllister to have litigated her claim for delinquent payments when
responding to a motion to modify custody or when she sought to modify future child support lest she 
be barred by res judicata. In her circumstance, she responded to a motion to modify child custody
with a motion to modify the child support obligation. Had she chosen to do so, she could have also
made a claim for the unpaid health insurance premiums at the same time; nevertheless, since the
subject matter was different and did not arise from the same transaction, not having chosen that
option, her recovery on these issues was not thereafter barred.

 Therefore, it was error to have determined that her claim for past-due child support was
barred by res judicata.

DID THE PRIOR AGREED ORDER REPRESENT A SETTLEMENT AGREEMENT
WHICH BARRED RECOVERY?


 Inextricably bound to the issue of res judicata in this case is the issue of whether the previous
agreed order (which pertained to the conservatorship and custodial matters regarding the child and
which exculpated McAllister of her penalties for contemptuous actions) represented a settlement
agreement which barred McAllister from pursuing her claims for delinquent support obligations. 

 It is settled law that the construction of an agreed judgment and a determination of
the obligations imposed upon the parties are governed by the rules applicable to
contracts generally. Ex parte Jones, 163 Tex. 513, 358 S.W.2d 370, 375 (1962);
Conner v. Bean, 630 S.W.2d 697, 703 (Tex. App.--Houston [1st Dist.] 1981, writ
ref'd n.r.e.). In construing a written contract, the primary concern of the court is to
ascertain the true intentions of the parties as expressed in the instrument. Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983); R & P Enterprises v. LaGuarta, Gavrel &
Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). 


Gracia v. RC Cola-7-Up Bottling Co., 667 S.W.2d 517, 519-20 (Tex. 1984).

 An agreed judgment must be interpreted as if it were a contract between the parties and the
interpretation is, accordingly, governed by the laws relating to contracts. See McCray v. McCray,
584 S.W.2d 279, 281 (Tex. 1979) (holding a child support agreement is largely governed by the
rules relating to contracts); Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (1956)
(holding a judgment by consent is contractual in nature); Biaza v. Simon, 879 S.W.2d 349, 355 (Tex.
App.--Houston [14th Dist.] 1994, writ denied) (holding an agreed or consent judgment is governed
by the law of contracts); see also Pate v. Pate, 874 S.W.2d 186, 188 (Tex. App.--Houston [14th
Dist.] 1994, writ denied) ("Agreed judgments, once rendered, are contracts between the parties that
excuse error and operate to end all controversy between the parties.").

 In reviewing the agreed judgment which was entered, it first alters the conservatorship of the
child from a possessory/managing conservatorship relationship to a joint managing conservatorship;
it then conforms the custodial and possessory rights of the child to the standard possession order
prescribed by statute; it vacates the previous orders finding McAllister in contempt and the award
of attorney's fees against her in favor of Pace; it denies all relief requested and not granted; finally,
it orders that all previous orders of the court not modified remain in force and effect. There is
nothing ambiguous about this order which mandates its judicial construction; its terms are manifestly
clear and determinable from the four corners of the instrument. Nothing in this order modifies the
child support obligation; contrarily, by specifically not modifying these orders (and stating that prior
orders not modified by it remain in force and effect), it ratifies the continued validity of those prior
orders. It is completely silent as to anything relating to past-due support.

 Where there is no ambiguity in a consent decree or judgment, a trial court is without authority
to modify it. See Pearcy v. Pearcy, 884 S.W.2d 512, 514 (Tex. App.--San Antonio 1994, no writ). 

 In the 2006 hearing, McAllister made it plain that when she consented to the entry of the
agreed order, it was not her intention to waive any right to reimbursement for past health insurance
premiums. The closest which Pace came to expressing his belief that the agreed order exculpated
him from the obligations which McAllister has pursued is in saying, "My understanding was in
hammering that agreement and giving up everything that I did, and dropping the contempt questions,
was that this was over with, that we were going to go about not bickering, being drug back into court,
and doing what was best for [the child]." It appears that Pace's impression of things did not match
the intentions of McAllister. A unilateral understanding is not an agreement. Emeritus Corp. v.
Highsmith, 211 S.W.3d 321, 329 (Tex. App.--San Antonio 2006, pet. denied). Even if one were
to look at the entry of the agreed judgment under an implied-in-fact contract theory, that would
require a meeting of the minds which the evidence at the hearing does not reveal. Excess
Underwriters at Lloyds v. Frank's Casing Crew & Rental Tools, Inc., 246 S.W.3d 42, 49 (Tex.
2008). Pace's unilateral understanding of the intention of the parties in entering the agreed order
does not constitute grounds to alter it to incorporate things it excludes. The agreed order does not
bar McAllister's claim.

 The order of the trial court is reversed and the matter is remanded to the trial court for a
determination of the issues raised in McAllister's motion for enforcement.





 Bailey C. Moseley

 Justice


Date Submitted: May 14, 2008

Date Decided: June 5, 2008


1. The March 28, 2005, order and the attachment were not made a part of the record, but the
nature of their content is drawn from recitations in the order from which appeal has been perfected
and from the briefs of the parties.
2. In 2003, the child became eligible for health insurance coverage at no cost through
McAllister's current husband's insurance provider. 
3. The Texas Family Code treats health insurance as "additional child support." Tex. Fam.
Code Ann. § 154.182 (b-1) (Vernon Supp. 2007). Sometimes in this opinion, no distinction is
made between unpaid health insurance premiums and unpaid child support.
4. A copy of the reporter's record of the August 30, 2005, proceeding was introduced into
evidence at the hearing held on October 21, 2006, and was a part of the reporter's record of the
second proceeding.
5. The memorandum order from which appeal has been taken recites that McAllister testified
that "the child's coverage was $451.00 per month through Tri-Care Health Insurance, which is
federal health insurance that her husband provides through his military retirement. MOVANT also
testified that the coverage costs her nothing and that there is no out-of-pocket cost for coverage under
that policy." This is an incorrect reading of the record. The record shows that the monthly
expenditure for health insurance sought by McAllister was incurred before P.D.D. became eligible
for coverage under the Tri-Care Health Insurance program in 2003 and that there has been no claim
made by McAllister for P.D.D.'s health insurance coverage since she became eligible.


tically-correct jury charge for both charged
counts. Cf. Huffman, 267 S.W.3d at 906 (discussing why nature-of-conduct crimes require jury
unanimity on manner and means); and contrast Landarian v. State, 268 S.W.3d 532 (Tex. Crim.
App. 2008) (manner and means for result-oriented offenses not considered elements to be
incorporated into hypothetically-correct jury charge).
5. Rousseau v. State, 855 S.W.2d 666 (Tex. Crim. App. 1993).
6. Indecency with a child can likewise be committed by exposing one's genitals or anus to a
child or causing the child to expose his or her genitals or anus if the intention is to arouse or gratify
the sexual desire of a person. Tex. Penal Code Ann. § 21.11(a)(2) (Vernon 2003).